UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,

        -against-                07 Cr. 498 (DAB)

ALAN SCHAEFER,

            Defendant.

-------------------------------------------------x

## ALAN SCHAEFER'S MEMORANDUM OF LAW IN SUPPORT OF HIS PRE-TRIAL MOTIONS

GARY G. BECKER
GARY G. BECKER, LLC
*Attorney for Alan Schaefer*
200 WEST 57TH STREET
SUITE 900
NEW YORK, NY 10019
212-981-1980

TABLE OF CONTENTS

Introduction and Statement of Facts……………………………………………………1

    The State Court Proceedings ……………………………….…………………..2

ARGUMENT

POINT I

THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT LACKS
ESSENTIAL ALLEGATIONS OF FACT AND DOES NOT PROVIDE
ADEQUATE NOTICE OF THE OFFENSE CHARGED ………………………10

    The Failure to Identify the Underlying New York State Criminal Statute
    that "Any Person" Could be Charged with Violating ……………………11

POINT II

THE INDICTMENT SHOULD BE DISMISSED BECAUSE
18 U.S.C. §2442(b) IS FACIALLY INVALID …………………...………………15

    The Statute is Unconstitutional ……………………….……………………15

        1.    Incorporation of the "Probable Cause" Standard …………15

        2.    Due Process and First Amendment Considerations—
            Void for Vagueness and Overbreadth ………….……………20

        3.    Dismissal of Indictment Under Statute As Applied…………28

POINT III

A HEARING SHOULD BE HELD TO DETERMINE WHETHER THE
GOVERNMENT PARTICIPATED IN A VIOLATION OF NEW YORK'S
GRAND JURY SECRECY LAWS……………………………………………………29

POINT IV

THE COURT SHOULD DIRECT THE GOVERNMENT TO PROVIDE A
BILL OF PARTICULARS …………………………………...............………………31

CONCLUSION ……………………………………………………………….……34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA,

       -against-             07 Cr. 498 (DAB)

ALAN SCHAEFER,

          Defendant.

---------------------------------------------x


## ALAN SCHAEFER'S MEMORANDUM OF LAW IN SUPPORT OF HIS PRE-TRIAL MOTIONS

### Introduction and Statement of Facts

    Alan Schaefer respectfully submits this memorandum of law in support of his pre-trial motions for an Order: (1) dismissing the Indictment because it lacks essential allegations of fact and fails to provide adequate notice of the offense charged, and because the underlying statute, 18 U.S.C. §2422(b) is unconstitutional on its face and as applied; (2) directing the government to provide a bill of particulars; (3) scheduling a hearing to determine whether the government violated New York State's grand jury secrecy laws and suppressing evidence, and for further relief as the Court deems just and proper.

    The Indictment contains a single count which is a single sentence long. It alleges that "in or about July 2005" Mr. Schaefer knowingly attempted to "entice,"

"induce," "persuade," or "coerce" a person less than 18 years of age to engage in

sexual activity for which "a person" can be "charged with a violation of New York

Laws," and that he did so using a computer and the internet, all in violation of 18

U.S.C. §2422(b).  There is no specification of: (1) the identity of the minor who Mr.

Schaefer attempted to persuade; (2) the nature of the "sexual activity" that Mr.

Schaefer attempted to persuade the minor to engage in and for which "any person"

could be "charged with a violation of New York Laws;" or (3) the "New York laws"

that would be violated had the act(s) been consummated.  Should Mr. Schaefer be

convicted of the charge the Court will be obligated to impose a minimum sentence of five

years' imprisonment.


## The State Court Proceedings

Mr. Schaefer, then a New York City middle school music teacher with a twenty-

year-long unblemished record, was initially arrested July 20, 2005, by the New York

City Police Department following an internet sting operation, and was prosecuted in

state court by the Office of the District Attorney of New York County.  The State

Indictment charged Mr. Schaefer with one count of attempted dissemination of

indecent material to a minor, two counts of attempted sexual abuse and one count each

of attempting to endanger and endangering the welfare of a minor.  (Copy attached to

Notice of Motion as Exhibit A.)  The conduct underlying the State charges is identical

to that giving rise to this federal prosecution.

It was alleged that about two weeks earlier, on July 7, 2005, Mr. Schafer had

sent sexually-oriented instant messages over the internet by means of a computer with someone he believed to be a 13-year-old girl but who was, in fact, an undercover police officer. A few days later, on or about July 11, 2005, Mr. Schaefer e-mailed a photograph of his face only to the undercover officer. There were no further communications between Mr. Schaefer and the undercover officer until July 19, 2005, when the undercover officer instant-messaged Mr. Schaefer. Mr. Schaefer responded to the officer's inquiries with additional sexually-oriented instant messages sent over the internet and discussed a meeting with "her" the following day. Mr. Schaefer stated that he would be "babysitting," that he would "have to bring the baby" with him, and that, "I just thought it would be nice to meet you."[1] Prior to the meeting July 20, 2005, which culminated in Mr. Schaefer's arrest, Mr. Schaefer instant-messaged the "minor" to confirm that he would be bringing his fourteen-month old son to the park with him and that, "I just want to meet you today, not do anything."

Mr. Schaefer was arraigned in state court on July 21, 2005 and released on his own recognizance.

Mr. Schaefer moved pre-trial for dismissal of all counts in the state Indictment on a number of grounds including, as pertinent here, that the evidence before the grand jury was insufficient to make out the crimes with which he was charged. Consistent with the discovery provided, Mr. Schaefer argued that his inane, salacious computer chatter with an undercover officer holding himself out to be a 13-year-old

---

[1] We have not attached the transcripts of the various communications as exhibits but can make them available if the Court wishes.

girl did not come dangerously close to the offenses the state indictment charged Mr. Schaefer with attempting. Nor did Mr. Schaefer say or do anything when he met by pre-arrangement an undercover officer posing as a teenaged girl that was meaningfully closer to any completed offense.

To the contrary, notwithstanding the peculiarity of a 43-year-old father, accompanied by his 14-month-old son, arranging to meet and meeting a purported 13-year-old stranger in a public place, Mr. Schaefer's conduct on the day of his arrest involved no sexual overtures, which was in keeping with his declarations in the instant messages that he and the undercover officer would "not do anything" when they met. Mr. Schaefer was searched following his arrest. He had no condoms, lubricant, camera, suggestive photographs, pornographic or sexual literature, liquor, drugs, or any other item suggestive of an intent to have sexual relations. He carried no flowers or other gifts.

The attempted sexual abuse charge was grounded in the prosecution's assertion that Mr. Schafer's instant messages and oral statements evinced an intent to have "sexual contact," i.e., "contact between the mouth of the defendant and the mouth of said individual." Although Mr. Schaefer's instant messages were unquestionably salacious he argued that under New York law the mouth is not "a sexual or other intimate part" of the body within the meaning of the statute so that mere kissing on the mouth does not constitute sexual abuse. Mr. Schaefer's instant messages provided no evidence that he intended anything more than a kiss at his contemplated meeting

4

with the undercover officer.[2]

On or about January 25, 2007, New York County Supreme Court Justice James Yates granted Mr. Schaefer's motions to dismiss three of the five counts in the indictment – dissemination of harmful material to a minor; attempted sexual abuse; and endangering the welfare of a minor.  (Copy of pertinent pages of New York State docket sheet in People v. Schaefer, Ind. No. 580/2006, attached to Notice of Motion as Exhibit B).  Viewed in the light most favorable to the prosecution, the court found that the evidence before the grand jury – including Mr. Schaefer's instant messages, and the recording of his July 20, 2005, meeting with the undercover officer posing as a thirteen-year-old girl—was insufficient to support these charges.

Rather than appeal Justice Yates' decision, the New York County District Attorney's Office elected to discontinue its prosecution of Mr. Schaefer while referring it to the United States Attorney's Office for the Southern District of New York.  However, no notice of this referral was then provided to Mr. Schaefer or his counsel.  On information and belief, without obtaining judicial authorization, the District Attorney turned over to the federal authorities all of its investigative files including the materials it had introduced before the state grand jury the disclosure of

---

[2]During instant messages on July 19, 2005, the undercover asked Schaefer if he wanted to do something more than kiss: "u don't want to do that then right." Schaefer immediately responded, "Nope ... just meet and if you like me you can hold my hand or kiss me."  Instant Message, July 19, 2005, at 1-2. See also Instant Message (July 19, 2005) at 2 ("do you think about kissing me?"); Id. at 3 ("thinking about kissing me tomorrow?"); Id. at 4 ("I just want to kiss each other and touch each other ... no sex"); Id. at 4 ("just talking, hand holding, kissing tomorrow"); Instant Message (July 20, 2005) at 1 ("I just want to meet you today, not do anything").

which were governed by New York State's grand jury secrecy laws.

On or about March 23, 2007, at about six thirty in the morning, a team of six to eight FBI agents, dressed in full swat team garb, descended on Mr. Schaefer's home to arrest him. They aggressively segregated Mrs. Schaefer and her young son from Mr. Schaefer and tried to interrogate her. They conducted a "protective sweep" of their home, purportedly to look for weapons. Mr. Schaefer's federal arrest was undertaken without giving any prior notice to Mr. Schaefer, notwithstanding that he was represented by counsel and had been at liberty on his own recognizance for almost two years, living with his wife and child. He was charged in a federal criminal complaint with attempting to persuade or induce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

At a state court appearance April 5, 2007, the District Attorney announced that it had referred the matter to federal authorities and, on the prosecutor's motion, the court dismissed the remaining counts in the state Indictment. See Exhibit B.

In June 2007, the instant Indictment was returned and discovery was produced to Mr. Schaefer. Upon information and belief, it merely replicated that which had been gathered by the state authorities and previously produced to Mr. Schaefer. (Copy of government's discovery letter, dated June 20, 2007, attached as Exhibit C to Notice of Motion).

In these motions we seek dismissal of the Indictment because it does not allege any facts supporting an essential element of the offense charged and thereby fails to provide adequate notice, in violation of the Fifth Amendment and Rule 7(c), Fed.R.Crim.P. That

is, "the New York State laws" for which "a person can be charged" with violating if Mr. Schaefer had succeeded in his attempt, an essential element of the federal offense, are *not* specified. The Indictment further fails to identify the unlawful "sexual activity" Mr. Schaefer allegedly attempted to persuade the "minor" to engage in. The Indictment fails even to charge that the "laws" that would be violated if the sexual activity were consummated prescribe "criminal offenses," as required by section 2422(b).

Given the Indictment's silence on these matters, it is doubtful that the grand jury was presented with evidence of, or specifically asked to consider, the violations of any particular "New York State laws." Absent notice through the Indictment, Mr. Schaefer cannot prepare a defense. Further, the Indictment fails to allege that the "minor" was under age 18, which means that no criminal offense is alleged, since under New York law an adult may have sexual intercourse with a 17-year-old without violating the law.

Dismissal of the Indictment is warranted for the additional reason that title 18 U.S.C. §2422(b) is facially invalid under the Fifth Amendment. It subjects to federal criminal prosecution any person who, using the specified means of interstate commerce, persuades, induces, entices, or coerces any individual less than 18 years of age "to engage in prostitution or in *any sexual activity* for which *any* person *can be charged* with a criminal offense, or attempts to do so ..." (emphasis added). The statute is constitutionally infirm because, among other reasons, on its face it permits prosecution of a person who merely "can be charged" with an offense under state law involving

"sexual activity." A person "*can be charged*" with an offense improperly, without probable cause, or properly, with probable cause. Yet in either situation, conviction on a probable-cause standard, or less, is violative of the Due Process Clause of the Fifth Amendment.

The statute is also unconstitutionally vague. It provides virtually no notice or standards with respect to the other "criminal offenses" it purports to reference in relation to inducing "sexual activity" by minors. The term "sexual activity" is not defined in the federal statute or in *any* New York State penal statute. Thus, the state statutes, in New York, or in any other jurisdiction where at least one party to an internet communication is present, all incorporated by section 2422(b), are virtually limitless. To ensure that his conduct does not violate the federal statute, the citizen must be aware of every section of not only his own state's criminal code, but the codes of all fifty states, as well as countless municipalities.

Many of these ordinances are themselves vague and, since they are incorporated into and become elements of a §2422(b) violation, the latter statute is infected with vagueness as well. And even if the citizen is aware of all the myriad laws and regulations, purportedly referenced by the federal statute, since the term "sexual activity" is undefined, the citizen is left without guideposts for conforming his conduct to the law.

The incorporation problem also presents First Amendment overbreadth and vagueness concerns by potentially subjecting federal defendants to prosecution for incorporated state statutes that may impinge upon protected free speech. Thus, §2422(b) should be invalidated on its face as well as in its application to this case.

8

Mr. Schaefer also seeks suppression of the materials before the New York State grand jury that were subsequently produced to the federal authorities here. Grand Jury proceedings in New York are secret and matters presented there may not be disclosed to third persons about a court order or pursuant to specified exceptions not pertinent here. A hearing should be held to determine the exact circumstances underlying what may have been a serious breach of law governing grand jury secrecy.

Mr. Schaefer also seeks production of a bill of particulars. The one-sentence Indictment merely tracks the language of the statute, and fails to provide any particulars. Mr. Schaefer is not told with specificity when he attempted to commit the crime; which New York State law he intended to violate; or whether he attempted to "coerce" the minor, or "persuade" her, or "induce" her, or "entice" her. Mr. Schaefer's written request for particulars, July 2, 2007, was rejected *in toto* by the government. (Copies of Mr. Schaefer's July 2, 2007 request and the government's September 2, 207 response are attached to the Notice of Motion as Exhibits D and E, respectively.)

## **ARGUMENT**

## **POINT I**

### **THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT LACKS ESSENTIAL ALLEGATIONS OF FACT AND DOES NOT PROVIDE ADEQUATE NOTICE OF THE OFFENSE CHARGED**

The Indictment is a single sentence long.  It charges a violation of 18 U.S.C.

§2422(b), which provides, in pertinent part:

> Whoever, using the mail or any facility or means of interstate
> or foreign commerce ... knowingly persuades, induces,
> entices, or coerces any individual who has not attained the
> age of 18 years, to engage in prostitution or any sexual
> activity for which any person can be charged with a criminal
> offense, or attempts to do so, shall be fined under this title
> and imprisoned not less than 5 years and not more than 30
> years.[3]

After repeating the boilerplate statutory language, the Indictment adds only that

Mr. Schaefer "used a computer and the Internet to attempt to entice, induce, coerce, and

persuade a minor to engage in sexual activity in violation of New York State laws."  No

additional facts or allegations are set forth.

The Indictment's failure to identify the "New York State laws" that Mr. Schaefer

attempted to violate, and as to which "a person can be charged with a criminal offense,"

an essential element of the attempted federal offense, requires its dismissal.  The defect

is no less fundamental than if the Indictment charged Mr. Schaefer with "using a

computer and the Internet to attempt to entice, induce, coerce, and persuade a minor to

---

[3] Subsequent to Mr. Schaefer's initial arrest, the penalty structure was amended to provide for a minimum sentence of 10 years' imprisonment and a maximum of life imprisonment.

engage in sexual activity *in violation of federal laws*," without any specification as to the laws violated.

### The Failure to Identify the Underlying New York State Criminal Statute That "Any Person" Could Be Charged with Violating

Under the Fifth and Sixth Amendments, respectively, the government may not prosecute an individual for a felony except upon indictment by a grand jury and only if the individual is "informed of the nature and cause of the accusation." Every element of the offense charged must be alleged in the Indictment. Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Rosenblatt, 554 F.2d 36, 39 (2d Cir. 1977).

Reflecting these constitutional protections, Rule 7(c)(1), Fed.R.Crim.P., requires that an indictment not only identify the statute the defendant is alleged to have violated, but also set forth a "definite written statement of the essential facts constituting the offense charged ..." See United States v. Bustos de la Pava, 268 F.3d 157, 162 (2d Cir. 2001) (requiring Indictment to set forth a "plain, concise and definite written statement of the essential facts constituting the offense charged"). Here, the Indictment does neither.

These requirements ensure, consistent with the Fifth Amendment right to be indicted by a grand jury, that a defendant is not "convicted on the basis of facts not found by, and perhaps not even presented to the grand jury which indicted him." Russell v. United States, 369 U.S. 749, 763-64 (1962) (internal citations omitted). A properly pleaded indictment also informs the "court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one be had." United States v. Cruikshank, 92 U.S. 542, 558 (1876). Additionally, the indictment must be detailed

enough to "apprise[] the defendant of what he must be prepared to meet;" and "enable him to plead former jeopardy in subsequent proceedings for a similar offense." Russell, 369 U.S. 749, 763-64 (1962) (internal citations omitted). See also United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999); United States v. Santeramo, 45 F.3d 622, 624 (2d Cir. 1995).

The Indictment here fails to satisfy any of these core constitutional requirements. The Court can have no assurance that Mr. Schaefer will not "be convicted on the basis of facts not found by, and perhaps not even presented to the grand jury which indicted him." Russell, at 763-64. For example, suppose at trial the government presents evidence supporting the petit jury's finding that Mr. Schaefer attempted to entice a minor to engage in activity that would constitute attempted sexual abuse in the second degree, in violation of New York's Penal Law §§110/130.60(2). As a violation of that penal statute is not alleged in the Indictment, there is no way to know whether the grand jury even considered it, let alone whether attempted sexual abuse was the "criminal offense" it found a person could have been charged with committing. Such a finding would have been at odds with the determination of Justice Yates who found, as a matter of law, that Mr. Schaefer's conduct was insufficient to support that charge.

Similarly, because the Indictment does not present *any* facts regarding the "criminal offense" for which "a person can be charged," the Court is helpless to "decide whether they are sufficient in law to support a conviction, if one be had." Cruikshank, 92 U.S. 542, 558 (1876).

The Indictment does not "apprise[] the defendant of what he must be prepared to

meet;" or "enable him to plead former jeopardy in subsequent proceedings for a similar offense." Russell, supra. At trial, should Mr. Schaefer be prepared to defend against the claim that he had attempted sexual abuse in mind, or was it attempted sexual misconduct, in violation of P.L. §130.20, or some other offense? The elements of these offenses are not congruent, and the conduct to be proven theoretically may, or may not, support a conviction under one, none, or both of them.

If the violation found by the grand jury was "attempted sexual misconduct" and it is not charged in the Indictment, how is Mr. Schaefer to plead former jeopardy in a subsequent proceeding? These matters go to a critical element of the federal offense charged and yet the Indictment is silent on all of them.

It is settled that where the statutory definition of a crime contains generic terms—here, that the defendant persuaded, or attempted to persuade a minor to engage in sexual activity for which any person can be criminally charged—the indictment must include "a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Russell at 765; see Cruikshank, at 557-59; United States v. Pirro, 212 F.3d 86, 93 (2d Cir. 2000) ("[T]he indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."). Here, not only does the Indictment fail to contain facts describing or identifying the specific criminal act, it fails even to meet the generic statutory requirement that the sexual activity be one for which a person can be "charged with a criminal offense." Cf. United States v. Keck, 172 U.S. 434, 437 (1899); Cruikshank at 558-59; United States v. White, 87 Fed. Appx. 566, 573 (6th Cir. 2004);

Pirro, at 93-95. Rather, it says only that the conduct would have been in violation of "New York Laws," not necessarily its penal laws.

Further, "[w]here an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense." Pirro at 93 (dictum), citing Wayne R. LaFave and Jerold H. Israel, Criminal Procedure, § 19.2 at 452 (1984); Charles Alan Wright, Federal Practice and Procedure: Criminal 3d, § 124 at 549 (1999); see Keck, 172 U.S. 434, at 437 (holding an indictment insufficient where, tracking the words of the statute, it alleged that the defendant had imported merchandise "contrary to law," without specifying the statute or law contravened); White, 87 Fed.Appx. 566, at 572 -74 (unpublished opinion) (confirming that Keck remains good law and holding insufficient the defendant 's indictment for fraudulently imported high-capacity firearm magazines "contrary to law"); United States v. Hill, 279 F.3d 731, 740-42 (9th Cir. 2002) (reversing an accessory conviction where the indictment failed to specify the underlying "offense against the United States"); United States v. Miller, 774 F.2d 883 (8th Cir. 1985) (reversing conviction for conducting "an illegal gambling business," defined as a gambling business "in violation of the law of the State or political subdivision in which it is conducted," without specification of the applicable State law); Choung v. People of the State of California, 320 F.Supp. 625, 628-31 (E.D.Cal. 1970) (granting writ of habeas corpus where the misdemeanor complaint charged that the defendant entered a school "without lawful business" there, but failed to specify his unlawful purpose).

The Indictment is defective for the additional reason that in New York it is not

unlawful to engage in consensual "sexual activity" with a minor, provided he or she has

attained the age of 17. And persuading a 17-year-old minor to engage in sexual

intercourse, or enticing a minor to engage in sexual activities with another minor, or

inducing a minor to engage in sexual education activities, for example, is not criminal

under New York law. Yet the Indictment here, lacking <u>any</u> factual allegations, asserts

only that Mr. Schaefer attempted to persuade "a minor" to engage in "sexual activity," a

term that is not defined and which is not necessarily criminal.

"It is a settled rule that a bill of particulars cannot save an invalid indictment."

<u>Russell</u>, at 770, (<u>citations</u> <u>omitted</u>). Therefore, although we seek production of a bill of

particulars as alternative (though insufficient) relief, the indictment should be dismissed.


## POINT II

### THE INDICTMENT SHOULD BE DISMISSED BECAUSE 18 U.S.C. §2422(b) IS FACIALLY INVALID

#### <u>The Statute is Unconstitutional</u>

1.    <u>Incorporation of a "Probable Cause" Standard</u>

As codified, section 2422(b) subjects to prosecution, conviction and

punishment a defendant who has persuaded[4] or attempted to persuade a person under 18

to engage in conduct for which "*any* person *can be charged*" with a criminal offense. It

is indisputable that the mere lodging of a criminal charge constitutes no evidence of

wrongdoing. A person can "*be charged*" merely when a police officer subjectively

---

[4] We use "persuade" throughout this memorandum as a shorthand verb to include the several
others verb in the section, <u>i.e.</u>, "induce," "entice," and "coerce."

believes he has probable cause to do so, even if he is incorrect.  Indeed, a person can "*be charged*" where the officer is acting in bad faith.  Even if "can *be charged*" is construed as *properly* charged, the statute is still defective because of its incorporation of a *probable cause* determination as an element of a federal penal statute—in violation of the reasonable doubt standard that is fundamental to due process.  See In re Winship, 397 U.S. 358 (1970).

This defect cannot be cured through creative judicial (re)construction.  That is, the Court may not insert the word "properly" in the phrase "can be charged" or read the phrase to mean "constitutes a crime," or otherwise construe it to mean something it does not say.  A venerable and oft-cited Supreme Court precedent, United States v. Reese, 92 U.S. 214 (1875), makes this clear.  There, the Court invalidated a federal statute, enacted to implement the Fifteenth Amendment, which made it a crime to wrongfully deny a citizen the right to vote without limitation, even though the Fifteenth Amendment only empowers Congress to prohibit voting discrimination on account of "race, color, or previous conditions of servitude."  In holding the statute unconstitutional, the Court rejected the government's argument that the statute should be construed to "operate only on that which Congress may rightfully prohibit and punish."  Id. at 221.  In an analysis that is applicable to § 2422(b), the Court reasoned:

> We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional ... from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there.  []  The language is plain. There is no room for construction ... The question, then, to be determined is, whether we can introduce words of limitation into a

penal statute so as to make it specific, when, as expressed, it is general only.

It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. []

To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is not part of our duty.

Id.

Section 2422(b) similarly casts an unconstitutionally wide net, subjecting to federal prosecution anyone whose conduct creates a subjective basis merely to "charge" *any person* under some unspecified state criminal law that relates in some way to persuasion of a minor to engage in "sexual activity" (which term is also undefined). Although there may be ways to "fix" the statute by rewriting it, courts are not authorized, consistent with separation of powers, to "rewrite a ... law to conform it to constitutional requirements." Reno v. American Civil Liberties Union, 521 U.S. 844, 884-85 (1997), quoting Virginia v. American Bookseller's Ass'n, Inc., 484 U.S. 383, 397 (1988); United States v. Monsanto, 491 U.S. 600, 611 (1989), quoting United States v. Albertini, 472 U.S. 675, 680 (1985).

Section 2422(b) cannot be saved by severing the invalid portion "can be charged." See United States v. Toy, 198 U.S. 253, 262 (1905) ("the relevant portion being a single section, accomplishing all its results by the same general words, [it] must be valid as to all that it embraces, or altogether void."), citing Reese, supra, and other case law.

17

The carelessness (or deliberateness, as the case may be) with which Congress, in its zeal to punish presumed pedophiles utilizing the internet, enacted this statute,[5] is illustrated by comparing it to an analogous New York statute, Penal Law §100.05(2), entitled "Criminal solicitation in the fourth degree." That statute subjects to criminal prosecution a person who, "being over eighteen years of age, with intent that another person under sixteen years of age engage in *conduct that would constitute a crime, ...* solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct" (emphasis added).

When Congress drafted section 2422(b) it could have not only defined "sexual activity"—a failure we address further below—but also made explicit that such "activity" must *violate* a criminal statute. It did not. Congress obviously knows how to draft such a law in a constitutionally correct way, having done so in numerous other contexts. See, e.g., 18 U.S.C. §§ 836 (transportation of fireworks "in a manner or for a use prohibited by the laws of such State"); 842(e) (distribution of explosives to a person "in violation of ... State law"); 922(b)(2) (transfer of firearm in violation of any State law or any published ordinance"); 924(f)(3) (firearm transaction with intent to violate State narcotics law); 1511 (obstruction of State law to facilitate gambling business that is a "violation" of State

---

[5] The statute was enacted as part of the Telecommunications Act of 1996, Pub. L. 104104, Title V, § 508, 110 Stat. 137. Another provision of the same act, criminalizing the transmission of "obscene," "indecent", or "patently offensive" material over the Internet, was largely invalidated on First Amendment overbreadth grounds in Reno v. American Civil Liberties Union, 521 U.S. 844 (1997), after the Court noted criticism by a Senator that the legislation had been enacted "willy-nilly," without the benefit of any hearing and of only one hour of floor discussion. Id. at 859 n.24, quoting remarks of Senator Patrick Leahy.

law); 1952 ("unlawful activity" under the Travel Act involving prostitution, extortion, bribery or arson must be in "violation" of State law); 1955 (illegal gambling business must "violate" State law); 1956(c)(1) (defining proceeds of "unlawful activity" for purpose of money laundering statute as an activity "that constitutes a felony under State, Federal, or foreign law"); 1958 (murder-for-hire statute applies only where the murder "was in violation of the laws of any State or the United States"); 1959 (specified violent acts or "a crime of violence ... in *violation* of the laws of any State or the United States").

Congress' decision to use the language it chose, "can be charged," must be deemed purposeful. A court may not "construe" the statute to mean something at odds with its plain language, let alone rewrite the statute to require something that on its face the statute clearly does not.

We have found no Second Circuit or other circuit court opinion that addresses this issue with respect to §2422(b).[6] In United States v. Coonan, 938 F.2d 1553, 1564 (2d Cir. 1991) (and cases cited therein), the court rejected the claim that a prosecution under the RICO statute, 18 U.S.C. §1962, had to establish that the underlying predicate acts could be successfully prosecuted without running afoul of State double jeopardy

---

[6] In United States v. McDarrah, 05 Cr. 1182 (PAC), 2006 WL 1997638 (S.D.N.Y. 2006), the district court rejected this argument on the basis that it "ignor[ed] the language of the immediately previous phrase: 'any sexual activity...,'" stating that "[w]hen the two phrases are read together (sexual activity for which any person can be charged with a criminal offense), there is no 'probable cause' problem." Yet merely re-stating the language of the statute hardly eliminates the probable cause "problem" and the McDarrah court offered no discussion or explanation as to why it does. McDarrah also relied on dictum in United States v. Coonan, 938 F.2d 1553 (1991), cert. denied, 503 U.S. 941 (1992), finding it significant that although no party pressed the constitutional argument asserted here, "the Second Circuit made no mention of any constitutional infirmity with the statutory phrase in question – i.e., 'chargeable under State law.'" That the Second Circuit did not sua sponte strike down a statute as unconstitutional is hardly probative of the issue here.

provisions. It noted in <u>dictum</u> that §1961(1)(A)'s definition of racketeering activity as the commission of specified acts "chargeable under State law," "merely describe[] the type of generic conduct which will serve as a RICO predicate and satisfy RICO's pattern requirement," and that murder unquestionably is such a predicate act. <u>Id</u>. The court did not address, however, the issue raised here, whether the "can be charged" element of §2422(b) violates due process by reducing the burden of proof regarding the predicate state offense.[7]

## 2. Due Process and First Amendment Considerations—Void for Vagueness and Overbreadth

Section 2422(b) is also unconstitutional under the Due Process Clause of the Fifth Amendment "because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." <u>City of Chicago v. Morales</u>, 527 U.S. 41, 52 (1999) (invalidating vague loitering statute). Although an overbroad or vague statute ordinarily will not be facially invalidated unless it would have a substantial effect on protected speech, a vague statute may be facially invalidated on Fifth Amendment, versus First Amendment, grounds for failing to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits," or prevent "arbitrary and discriminatory enforcement." <u>Id</u>. at 56 (plurality opinion of

_____

[7] Moreover, <u>Coonan</u> is distinguishable because unlike section 2422(b), the RICO statute explicitly categorizes the crimes covered, specifically listing "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance ... which is chargeable under State law *and* punishable by imprisonment for *more than one year*" (emphasis added), i.e., felonies, only, for which a person actually would be subject to punishment, as well as specific federal statutes. Section 2422(b), by contrast, incorporates unspecified criminal statutes under which a person merely "can be charged."

Justice Stevens). See Kolender v. Lawson, 461 U.S. 352, 358 (1983), citing Reese, ante (invalidating vagrancy statute for its failure to include a "standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification").

Section 2422(b) is unacceptably vague because it applies to communications intended to induce a minor to engage in "sexual activity"—an undefined term—for which "any person can be charged" under any criminal statute.[8] This provides no reasonable notice to the "offender" of the range or scope of conduct that is prohibited or any objective standard for law enforcement. The criminal proceedings against Mr. Schaefer in state court illustrate this point. Mr. Schaefer was arrested and prosecuted on various state criminal charges, including attempted sexual abuse and dissemination of indecent material to a minor, based on conduct that the court ultimately determined did not violate the statutes in question.

It is easy to respond that a person knows that under State law he may not persuade, or attempt to persuade, a 13-year-old to have sexual intercourse or other specific forms of intimate sexual contact with an adult. Had section 2422(b) been so written, it would likely not be objectionable. Instead, Congress enacted a vague, open-ended law that contains virtually no limit on the behavior or speech that is subject to its reach.

---

[8] The district court in McDarrah, ante, rejected this argument by reading the phrase "can be charged with a criminal offense" as "engaging in sexual conduct that is, by its own definition, criminal..." As discussed, ante, courts are not free to re-write statutes to bring them into constitutional compliance.

"Sexual activity," as noted above, is not defined by the federal statute. While the principal dictionary definition of "activity" refers to "being active" or engaging in "action," see The Random House College Dictionary (1988), at 14, a secondary definition includes "normal *mental ...* action." Id. (no. 6) (emphasis added). Another dictionary lists 'liveliness" and "interest" as synonym for "activity." See Oxford Pocket Dictionary and American Thesaurus, American ed. (Oxford University Press 1997), at 9. One can engage in a verbal activity or physical activity. A verbal activity may involve speech. Thus, "sexual activity" may involve nothing more than engaging in speech about sex.

The absence of any definition of "sexual activity," or of any requirement that an incorporated state offense be the sexual activity itself or merely related to such activity, means that the range of state statutes that may be incorporated is virtually unlimited. They may be felonies, misdemeanors, or possibly even violations, as long as they are defined as "criminal" under the particular state's laws. They may contain inherently vague or subjective elements, thereby potentially infringing upon protected speech or activity under the First Amendment. And the applicable state statute would vary depending on the state jurisdiction in which the defendant is located, but also the state in which the recipient of the Internet communication is located, if different.

The New York Penal Law does not define "sexual activity," any more than the federal statute does. New York's Penal Law sets forth countless offenses that may be committed by means of, or incidental to, "sexual activity," however defined. Such offenses include "criminal solicitation" under Penal Law Art. 100; "Sex Offenses" under

Article 130; prostitution-related offenses under Article 230, obscenity offenses under Article 235; "Public Order" offenses under Article 240 such as harassment and disorderly conduct; public lewdness or exposure under Article 245; endangering the welfare of a child under Article 260; and sexual performance of a child under Article 263. Still other offenses may be incorporated if they result indirectly from "sexual activity," for example, a charge of trespass resulting from "sexual activity" in an unauthorized location.

Many of the aforementioned offenses are themselves vaguely defined under state law and subject to due process attack, or subject to First Amendment overbreadth challenge. Thus, a person may arguably be charged with violating §2422(b) for knowingly inducing a minor to engage, view or possess a "sexual" communication for which a person "can be charged" with obscenity under State law, such as inducing the minor to use bad language or to discuss sexual matters which a police officer might view as "obscene."

An adult who "persuades" a minor to read a newspaper or magazine that contains explicit sexual advertisements for "personal services," and which a police officer deems obscene for violating community standards, may be subject to prosecution under the statute. So is an adult who "persuades" a minor to engage in a theatrical "performance" that a police officer considers obscene, see Penal Law §235.05(2), or to receive a communication that constitutes "indecent material" because, inter alia, "in whole or in part," it "depicts actual or simulated nudity" or "sexual conduct" and, in the officer's judgment, is "harmful to minors," see Penal Law §235.21(3).

One arguably could be charged under §2422(b) for using the internet to induce a minor to be a model for or to display "offensive sexual material" in a public place, such as a depiction of "nudity" or "sexual conduct" in a school art show or other exhibition for which admission is charged, see Penal Law §245.11, or for "endangering the welfare of a child" by "act[ing] in a manner likely to be injurious to the ... mental or moral welfare of a child," see Penal Law §260.10(1), or to engage in "sexual activity" that might arguably constitute disorderly conduct (Penal Law §240.20), harassment (§§240.25 or 240.26), or loitering (§240.35). The aforementioned statutes arguably reach the inducement of a minor to see a movie or play about sex between adults and teenagers, such as the movie "Summer of '42," or to read such a book, such as "Lolita", or to read sexual education materials, which depict "sexual conduct" and in the view of some are "harmful to minors." See, e.g., Penal Law §235.21(1)(a).

Many of these state laws have been or could be subject to Due Process and First Amendment attacks on overbreadth and vagueness grounds similar to those found unconstitutional in Reno v. American Civil Liberties Union, supra (invalidating provisions of Telecommunications Act criminalizing the transmission to minors of a communication that is "indecent" or "patently offensive as measured by contemporary community standards"). While the Supreme Court in Reno reached only the First Amendment issues in invalidating criminal provisions of the Act, it noted that a three-judge District Court also had invalidated the statute on Fifth Amendment vagueness grounds. Id. at 862-63, citing 929 F. Supp. 924.

The incorporation by a federal statute of state laws that are themselves unconstitutionally vague or overbroad renders the federal statute subject to such challenges. Because this statute is needlessly vague and overbroad in incorporating state statutes that potentially infringe upon protected activity or speech under the First Amendment, it is facially invalid not only under Due Process standards, but also under First Amendment vagueness and overbreadth principles.

While several circuits, including the Second Circuit in United States v. Gagliardi, 506 F.3d 140 (2d Cir. 2007), have rejected facial attacks on §2422(b), none of those courts have considered at all, or adequately, the challenges pressed here. For example, in Gagliardi, the defendant argued that the statute was vague because of its failure to define the terms "entice," "induce," "coerce," and "persuade," a contention not pressed here and which was rejected by the Court given the common, everyday meaning of those terms. Gagliardi also reasoned that any constitutional problems regarding arbitrary or discriminatory enforcement were cured by the scienter requirement that the defendant "knowingly engage in the prohibited conduct," id. 506 F.3d at 147, but this not only injects a statutory element that is not in the text of section 2422(b), but also begs the question whether the statute is unconstitutionally vague for its failure to specify what conduct is "prohibited."

No one could argue that a criminal statute that merely prohibited one from "knowingly engaging in conduct that is prohibited under federal or state law" could withstand constitutional scrutiny. Yet that is the effect of Gagliardi's interpretation of section 2422(b). Finally, Gagliardi, the Second Circuit also rejected the contention, not

raised here, that the statute is overbroad because it suppresses protected speech by infringing on the right of an adult "to freely engage in fantasy speech with other adults." Gagliardi, 506 F.3d at 147

Similarly, in United States v. Bailey, 228 F.3d 637 (6th Cir. 2000), the court simply assumed that §2422(b) only targets the *conduct* of inducing minors to engage in "*illegal* sex *acts*," id. at 639 (emphasis added), and therefore would have at most "limited or incidental effect on speech," but did not consider the problems with the statute addressed herein, i.e., its failure to define "sexual activity" and its incorporation of untold state statutory provisions that are ambiguous or might punish or chill protected activity.

In United States v. Meek, 366 F.3d 705, 721 (9th Cir. 2004), and United States v. Dhingra, 371 F.3d 557, 561-62 (9th Cir. 2004), the Ninth Circuit also assumed without analysis that the statute only regulates "conduct" or "illegal acts" without considering the unlimited incorporation of vague or overbroad state statutes that may be "violated" by "sexual activity." The court also rejected the appellant's First Amendment argument that the statute is overbroad for incorporating local community standards regarding "decency," reasoning, incorrectly, that obscenity and First Amendment jurisprudence does not apply because the statute "regulates conduct, not speech." Dhingra, 371 F.3d at 563. As we have shown, by incorporating state law that does involve speech or protected activities, the federal statute does raise First Amendment concerns.

Contrary to the discussion in Dhingra, the Supreme Court's decision in Reno has much to say that is applicable to this case. First, the Court there found that the

26

Telecommunications Act was overbroad in applying to "minors" under age 18, whereas New York law defines "minor" as a person under age 17 – a defect that applies here as well.  See Reno, 521 U.S. at 865-66.

Second, Reno noted its concern about *criminal* statutes regulating speech over the Internet. Id. at 872.  See Winters v. New York, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. ... There must be ascertainable standards of guilt.").

Third, Reno distinguished obscenity statutes that prohibit dissemination of materials relating to "sexual conduct *specifically defined by the applicable state law,* " id. at 872 (emphasis added), which is in contrast to §2422(b)'s failure to define "sexual activity" and its incorporation of myriad state statutes that also fail to define the term. And finally, Reno found constitutionally unacceptable the incorporation, by a federal statute regulating internet communication across the fifty states, of varying local community standards of what is "indecent," "patently offensive" or "obscene". Id. at 877-78.  Section 2422(b)'s incorporation of state statutes that also invoke as elements local community standards regarding obscenity and sexual offensiveness creates the same constitutional problem.  To borrow the Supreme Court's example, a parent who thought that his or her child under the age of 18 was ready to engage in sexual activity, or wanted any such sex to be "safe," and provided information on birth control "via e-mail could be incarcerated ... if the college town's community" thought such conduct to be offensive. Id. at 878.

Finally, the Second Circuit's decision in Coonan, supra, construing the RICO statute, is inapposite here because, as noted above, it upheld a statute that referenced *specified* violent *acts* that unquestionably violate state law and constitute felonies, as well as *specific* federal criminal code sections. Thus, the RICO statute provides notice to potential violators of what conduct is proscribed and to law enforcement personnel of when an arrest or prosecution is authorized.

3.    **Dismissal of Indictment Under Statute As Applied**

Should the Court reject our argument that section 2422(b) is unconstitutional on its face, it should nonetheless find it invalid as applied. The indictment contains no factual statement setting forth the "sexual activity" Mr. Schaefer allegedly tried to persuade a minor to engage in for which "any person can be charged" under a State criminal statute. Indeed, not only is the specific violation of state law not stated in the indictment, the indictment does not even allege that the conduct that Mr. Schaefer attempted to entice the "minor" to engage in, if consummated, would have been "chargeable" as a *criminal* offense.

Rather, the Indictment alleges only that a person could be charged with a violation of "New York State Laws." The grand jury thus may have indicted Mr. Schaefer for trying to induce a "minor" to engage in "sexual activity" that merely violated New York civil or administrative law, or constituted a non-criminal offense or violation under the Penal Code (harassment, disorderly conduct, etc.). Or, even if the grand jury had a particular State criminal offense in mind, such offense could have been one that was itself unconstitutionally vague or involved protected speech. The vague indictment utterly fails

28

to limit the reach of the defective statute, and thus suffers from the same defect as the statute.

## POINT III

### A HEARING SHOULD BE HELD TO DETERMINE WHETHER THE GOVERNMENT PARTICIPATED IN A VIOLATION OF NEW YORK'S GRAND JURY SECRECY LAWS

The tradition that grand jury proceedings are conducted in secret is "older than our Nation itself." In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973). There are several justifications for grand jury secrecy: to encourage witnesses to testify freely; to reduce the risk that targets of a grand jury investigation will attempt to obstruct justice or flee; to protect the reputation of innocent people; to ensure the independence of the grand jurors and protect their deliberations from outside pressure; and to protect from adverse publicity innocent persons who are ultimately exonerated. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979).

As in the federal system, grand jury secrecy in New York is a matter of "strong historic policy" and plays a "vital role in promoting law enforcement" by, inter alia, protecting the reputation of innocent people, ensuring the independence of the grand jury, and encouraging witnesses to testify freely. Matter of Police Commissioner of the City of New York v. Patrick M., 131 Misc.2d 695, 703-04 (Sup. Ct. N.Y. Co. 1986). A good indication of the importance the New York Legislature accords grand jury secrecy is the fact that intentional unauthorized disclosure is a felony. See New York Penal Law §215.70.

New York Criminal Procedure Law Article 190 declares that "[g]rand jury

29

proceedings are secret" and that none of a long list of people who attend or participate in grand jury proceedings, as defined in C.P.L. §215.70, including "a public officer or public employee," can disclose the nature of substance of any grand jury testimony or evidence or "any matter attending a grand jury proceeding" except when "in the lawful discharge of his duties or upon written order of the court." C.P.L. §190.25(4)(a).

Mr. Schaefer's instant messaging with an undercover officer during a two-week period in July 2005 must have been introduced before the New York State grand jury that indicted him because the instant messages were the only contemporaneous record of Schaefer's actual language, the linchpin of the charges. We presume that Mr. Schaefer's recorded conversations with the undercover officers were also introduced to the state grand jury. Because the instant messages and tape-recordings were grand jury materials, cloaked in grand jury secrecy, the People were not thereafter free to reveal the instant messages and recordings to others without prior court approval, except in the lawful discharge of law enforcement duties, e.g., preparing a witness to testify.

Nonetheless, without seeking or obtaining judicial approval[9], the state prosecutors apparently produced to the United States Attorney's Office for the Southern District of New York the entirety of their investigative files, including the instant messages, tape recordings and other grand jury materials. The discovery produced by the government here is a reproduction, almost verbatim, of the discovery produced in the state proceedings. This was not a federal investigation; rather, the federal government

---

[9] A review of the official court files in People v. Schaefer, Ind. No. 580/2006 revealed no applications for an Order authoring disclosure of the grand jury materials and no Order to that effect. See Affidavit of Terri Rosenblatt, dated March 7, 2008, attached to Notice of Motion.

assumed the prosecution only after several of the state charges had been dismissed based on the insufficiency of the evidence presented to the state grand jury. The case was not foisted on the federal government. Rather, on information and belief, federal prosecutors conferred with their state counterparts and knowingly agreed to accept the prosecution, including the secret grand jury materials. Together, the two offices appear to have violated the legal restrictions governing grand jury secrecy.

The disclosure of the grand jury materials was not undertaken "in the lawful discharge of law enforcement duties" within the meaning of C.P.L. §190.25(4)(a). At the time of the disclosure, the state prosecution was moribund. There could be no "duty" to disclose the materials to anyone.

We respectfully ask the Court to conduct a hearing to explore the circumstances underlying what appears to have been a serious breach of law governing grand jury secrecy. Should the hearing demonstrate that the federal government knowingly colluded in the violation of those laws, suppression of the disclosed materials may be in order.

## POINT IV

### THE COURT SHOULD DIRECT THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS

For the reasons stated in POINT I, we believe the Indictment is fatally defective and cannot be saved by a bill of particulars. Should the Court disagree, however, we seek an Order directing the government to provide a bill of particulars.

Under Rule 7(f), a defendant is entitled to a bill of particulars when the indictment is too general to advise the defendant of the specific acts of which he is

accused so that he can prepare a defense, avoid surprise at trial, and be able to interpose a defense of double jeopardy if necessary. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1989); United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Wei, 862 F. Supp. 1129, 1133 (S.D.N.Y. 1994) (Stanton, D.J.).

A district court should consider a motion for a bill of particulars "with an awareness that an indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise. King v. United States, 402 F.2d 289, 292 (10th Cir. 1968), citing Will v. United States, 389 U.S. 90 (1967). Further, disclosure by the government of voluminous discovery is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the government would prove at trial. See Bortkovsky, 820 F.2d at 574-75.

The indictment here alleges only that "in or about July 2005" Mr. Schaefer attempted to induce an unidentified minor to engage in an unspecified sexual activity that would allow some unidentified person to be charged with some unidentified violation of New York laws. The indictment fails to disclose or specify the "violation of New York State law" Mr. Schaefer allegedly attempted to induce a minor to participate in, the nature of the "sexual activity" alleged, or the date, time and place of any overt act making out the crime of attempt.

The discovery produced by the government does not obviate the need for a bill of

32

particulars. It consists primarily of Instant Messages sent over the internet between Mr. Schaefer and the undercover officer, and certain recorded conversations. But the discovery does not specify "sexual activity" for which Mr. Schaefer "can be charged" with a "criminal offense," or when Mr. Schaefer took the substantial step that constituted an attempt to commit the "criminal offense." By incorporating State criminal law provisions, §2422(b) incorporates the elements of any such offense as part of the government's burden of proof. Surely Mr. Schafer is entitled to notice of the specific crime under State law he could be charged with violating when that "crime" is an element of the federal offense for which he is indicted. He is also entitled to assurance that the grand jury that indicted him was properly instructed on such an offense, and that the offense for which he will be actually tried is the offense for which he was indicted.

Similarly, he is entitled to know the factual nature of the government's contention that he took a substantial step towards commission of the completed crime. Mr. Schaefer should not have to guess at the government's theory as to what constitutes that step, or to have to face the possibility that the government will simply change its theory in mid-trial. By formal written demand dated July 2, 2007, Mr. Schaefer requested the government to provide a bill of particulars containing such factual information, but the government declined to do so. <u>See</u> Exhibits D and E. Consistent with Mr. Schaefer's request, the Court should direct the government to provide a bill of particulars specifying:

> (a) the specific date(s), time(s) and place(s) on or at which the grand jury found Mr. Schaefer "attempted" to "persuade,"

"entice," "coerce" or "induce an individual to engage in sexual activity, i.e., the conduct that constituted a substantial step towards consummation of the offense;

(b) whether the grand jury found Mr. Schaefer attempted to "persuade" or "induce" or "coerce" or "entice" the individual;

(c) the manner and means by which the grand jury found Mr. Schaefer attempted to "persuade..." the individual to engage in sexual activity;

(d) the "sexual activity" that the grand jury found Mr. Schaefer attempted to "persuade..." such an individual to engage in; and

(e) the "criminal offense(s)" that the grand jury found "any person" could be charged with committing;

(f) the "New York laws" that the grand jury found would have been "violated"

## CONCLUSION

The Court should grant Mr. Schaefer's pre-trial motions, and order such other or further relief as the Court deems just and proper.

Dated: New York, New York
        March 11, 2008

GARY G. BECKER, ESQ.
200 West 57th Street
Suite 900
New York, NY 10019
(212) 981-1980
*Attorney for Alan Schaefer*

34