UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :      **ECF CASE**

      - v. -                            :      S1 07 Cr. 498 (DAB)

ALAN SCHAEFER,                      :
    a/k/a "AlanSnyc39@aol.com,"
    a/k/a "alansnyc2@hotmail.com,"     :
    a/k/a "alansnyc39@yahoo.com,"
                                     :

                   Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# GOVERNMENT'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT ALAN SCHAEFER'S
# PRE-TRIAL MOTIONS


                            MICHAEL J. GARCIA
                            United States Attorney
                            Southern District of New York
                            Attorney for the United States
                             of America


Christian R. Everdell
Assistant United States Attorney
     - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Alan Schaefer's pre-trial motions.  In his motions, the defendant raises the following arguments:

(1)    The federal child enticement statute – 18 U.S.C § 2422(b) – is unconstitutional on the grounds that the statute (i) incorporates a "probable cause standard," (ii) is void for vagueness and overbroad, and (iii) is invalid "as applied" because the Indictment does not specify the sexual activity or the New York State criminal laws that the defendant allegedly violated;

(2)    The Indictment should be dismissed because it does not identify the provisions of New York State criminal law that the sexual activity proposed by the defendant would have violated, if it had, in fact, occurred;

(3)    The Court should order a hearing to determine whether the Government obtained documents from the New York County District Attorney's Office in violation of New York's Grand Jury secrecy laws;

(4)    The Court should direct the Government to provide a bill of particulars.

The defendant's motions should be denied in their entirety.  As explained more fully below, defendant's arguments regarding the constitutionality of § 2422(b) and the sufficiency of the Indictment lack merit and were previously rejected by Judge Crotty in an analogous case, *United States* v. *McDarrah*, No. 05 Cr. 1182 (PAC), 2006 WL 1997638 (S.D.N.Y. Jul. 17, 2006).  Furthermore, each Circuit Court to consider the constitutionality of the statute, including the Second Circuit in *United States* v. *Gagliardi*, 506 F.3d 140 (2d Cir. 2007), has upheld it.  The statute does not incorporate a probable cause standard, and the Indictment, and Superseding Indictment, are sufficient as a matter of law.  Next, the defendant has not established, even on the facts he alleges, that a breach of New York's grand jury secrecy laws occurred, or that suppression of the documents in question is even available as a remedy, much less warranted in

this case.  Accordingly, his request for a hearing on this issue should be denied.  Finally, the bill
of particulars requested is mooted by the discovery provided and the Superseding Indictment,
and, with respect to the request for Grand Jury information, the request is not proper as a matter
of law.  For each reason, the discovery requests should be denied.

## FACTUAL BACKGROUND

### I.    INVESTIGATION AND STATE COURT PROCEEDINGS

#### A.    The Investigation

On or about July 7, 2005, an officer with the New York City Police Department
("NYPD"), while acting in an undercover capacity as a 13-year-old girl named "Mary" ("UC-1"),
was contacted over the Internet by an individual using the screen name  "AlanSnyc39@aol.com."
Complaint ¶¶ 2-3.[1]  The person using that screen name was later identified as the defendant, Alan
Schaefer, a/k/a "AlanSnyc39@aol.com," a/k/a "alansnyc2@hotmail.com," a/k/a
"alansnyc39@yahoo.com."  Id. ¶ 2.

UC-1 posing as "Mary" and the defendant engaged in an electronic "instant messaging"
conversation.  Complaint ¶ 3.  The defendant initiated the conversation and said that he was a 43-
year-old man from Queens, New York.  Id. ¶ 3(a); 7/7/05 Tr. 1.  The defendant then asked UC-1,
"[L]ooking for an older guy who loves young girls?"  Id.  UC-1 responded and identified himself

---

[1]  "Complaint" refers to the federal complaint, "Br." refers to Schaefer's Memorandum of Law;
and "Becker Affidavit" or "Becker Aff." refers to the Affirmation of Gary G. Becker in support of the
defendant's motion.  "Everdell Aff." refers to the Affirmation of Christian R. Everdell in support of the
Government's opposition.  The Government's memorandum also cites the transcripts of the instant
messaging chats between the defendant and UC-1 on July 7, 2005, July 19, 2005, and July 20, 2005, as
well as the recorded telephone call between the defendant and UC-1 on July 19, 2005.  These are referred
to as "7/7/05 Tr.," "7/19/05 Tr.," "7/20/05 Tr.," and "7/19/05 Telephone Call," respectively.  The
Government produced these items to the defendant in discovery on June 20, 2007, and can provide them
to the Court, if the Court would like to review them in connection with this motion.

as a 13-year-old girl from New York City, named "Mary." *Id.* ¶ 3(b); 7/7/05 Tr. 1. The defendant replied, "cool . . . I LOVE your age! YUM! [G]irls your age are soooooo hot! I get instantly hard when they tease me or flirt with me or touch me." 7/7/05 Tr. 1. When UC-1 asked the defendant, "u like that im 13," the defendant replied, "yes! sooooooooo sexy. young cutie with an older experienced guy is perfection." *Id.* The defendant also told UC-1, "I love girls who look innocent but can be really sexy when they want to be," and soon thereafter stated, "I hope we like each other. I'm free during the summer if we ever want to play." Complaint ¶ 3(c); 7/7/05 Tr. 1. The defendant also indicated that he sent a photograph to UC-1 by email and stated, "I think you'l [sic] like it. [Y]ou can look at it and think of kissing me . . . [that] would be so hot." *Id.* ¶ 3(d); 7/7/05 Tr. 3. On or about July 11, 2005, the defendant sent an email to UC-1 attaching a photograph of himself, in which he stated, "I hope you get this and I hope you like me." *Id.* ¶ 4.

On or about July 19, 2005, UC-1 again engaged in an electronic instant messaging conversation with the defendant. During that conversation, the defendant asked UC-1 for a picture and told UC-1, "if I had your pic, I'd look at it every chance I got. . . . I would probably make myself cum while I looked at it." Complaint ¶ 5(a); 7/19/07 Tr. 1. The defendant then raised the subject of meeting UC-1. The defendant stated, "I could meet you right now, or tomorrow the same time if you want." When UC-1 responded "u want to?" the defendant responded, "yes... tomorrow around now? [B]ut I have to bring the baby . . . he's young . . . he won't mind if we kiss." Complaint ¶ 5(b); 7/19/07 Tr. 1. The defendant subsequently asked UC-1, "do you think about kissing me?" and then told UC-1, "I'm positive it will make me hard for you . . . just kissing . . . do you think you want to feel how hard?" Complaint ¶ 5(c); 7/19/07 Tr.

4

2.  The defendant also told UC-1, "I bet I can get you very wet! [D]ripping," and then said, "I'm

getting hard for you right now just thinking about it . . . I wish you could touch it . . . you'll love

how hard it is for you."  Complaint ¶ 5(d); 7/19/07 Tr. 3.

Later in the same instant messaging conversation, the defendant asked UC-1, "What else

were you thinking about doing?"  Complaint ¶ 5(e); 7/19/07 Tr. 4.  When UC-1 responded, "I

don't know . . . anything fun.  Like what u want to do?" the defendant replied, "eventually, I want

you to suck my hard cock. . . . not at first . . . are you into [that] eventually?"  *Id*.  When UC-1

responded, "If I like you,"  the defendant stated, "And [would] you [want] me to make you cum

with my hand . . . and maybe with my mouth . . .if you like me?"  *Id*.  The defendant then

provided UC-1 with his phone number and arranged a telephone call with UC-1 for later that day.

Complaint ¶ 5(e); 7/19/07 Tr. 5.

Thereafter, a different female NYPD officer, acting in an undercover capacity as the

13-year-old girl "Mary" ("UC-2"), had a conversation with the defendant over the telephone.

During that telephone conversation, the defendant told UC-2 that he did not care that she was 13

years old and that he loved that she was 13 years old.  Complaint ¶ 6(a); 7/19/05 Telephone Call.

The defendant asked UC-2 if they kissed and she got "turned on," would she want to "feel how

hard" he was.  7/19/05 Telephone Call.  The defendant also asked UC-2 if she would hold his

penis in her hand and rub it while they kissed.  Complaint ¶ 6(b); 7/19/05 Telephone Call.   The

defendant then asked UC-2 if she was wet and asked her to touch herself while they talked.

Complaint ¶ 6(c); 7/19/05 Telephone Call.  The defendant also told UC-2 that he liked younger

girls that did not have much pubic hair.  *Id*.

The defendant also discussed having sexual intercourse with UC-2.  7/19/05 Telephone

Call.  The defendant told UC-2 that he did not think it was right to have sex at first, but that if

UC-2 wanted to have sex with him and they had the opportunity, she should tell him.  *Id.*  He

also told UC-2, "[W]hen a girl says to a guy, 'You turn me on and I want to do it with you,' it's

so sexy."  *Id.*  When UC-2 asked him what would happen if she told him she wanted to have sex

the first time they met, the defendant responded, "That would be totally up to you, but it doesn't

have to be."  *Id.*

On or about July 20, 2005, UC-1 engaged in one final electronic instant messaging

conversation with the defendant.  Complaint ¶ 7.  During that conversation, UC-1 asked the

defendant, "u still coming?"  Complaint ¶ 7(a); 7/20/05 Tr. 1.  The defendant responded, "Yes, if

you want me to," and then stated, "[T]here's traffic now, so it might take a while... it's like 5

now, maybe 6."  *Id.*  The defendant asked UC-1 if he could meet UC-1 "[at] 6 in the park. [B]y

the fountain?" and told UC-1 that he would be wearing "a grey polo shirt and jeans."  Complaint

¶ 7(b); 7/20/05 Tr. 1-2.  The defendant then asked UC-1, "promise i won't be arrested?????"

7/20/05 Tr. 2.  When UC-1 responded, "what u mean?" the defendant replied, "you know . . . set

up, like on the news . . . sorry for even asking."  *Id.*

Later that same day, at approximately 6:15 p.m., UC-2 met the defendant at Washington

Square Park, located at 5th Avenue and Washington Square North.  Complaint ¶ 8.  UC-2

identified herself to the defendant as the 13-year-old girl that he had been speaking to in the

chats.  Complaint ¶ 8(a).   The defendant acknowledged that he was the individual who had

chatted using screen name "AlanSnyc39@aol.com."  *Id.*  During this meeting, the defendant told

UC-2 that her "eyes [were] beautiful," and said, "You're a little doll."  Complaint ¶ 8(b).  The

6

defendant also stated, "So maybe I can stay with you until 7:30, because your mom comes home at midnight." *Id.* The defendant and UC-2 walked to the defendant's car, which was parked nearby. Complaint ¶ 8(c). The defendant and UC-2 then walked hand-in-hand to a building located at 143 Waverly Place, which UC-2 stated was her home, and walked up the steps to the front door. *Id.* At that time, the defendant was arrested by NYPD officers. *Id.*

Following his arrest, the defendant was advised of his *Miranda* rights, which he waived. Complaint ¶ 9. After waiving his *Miranda* rights, the defendant stated, among other things, that he had been involved in instant messaging conversations with someone named "Mary," who he believed to be a 13-year-old girl. *Id.* The defendant also stated that he was a middle school teacher at a New York City middle school, M.S. 67, located in Queens, New York. *Id.* Later that same day, the defendant was taken to the New York County District Attorney's Office, where he made a videotaped statement after waiving his *Miranda* rights.

### B.      State Court Proceedings

On or about July 21, 2005, the New York County District Attorney's Office filed a six count criminal court complaint, charging the defendant with three counts of attempting to disseminate indecent material to minors in the first degree, in violation of New York Penal Law, Sections 110 and 235.22; one count of attempted sexual abuse in the second degree, in violation of New York Penal Law, Sections 110 and 130.60(2); one count of endangering the welfare of a child, in violation of New York Penal Law, Section 260.10(1); and one count of attempting to endanger the welfare of a child, in violation of New York Penal Law, Sections 110 and 260.10(1). The defendant was arraigned on these charges that same day and released on his own recognizance.

On or about February 7, 2006, a Grand Jury in New York County returned a five count indictment against Schaefer. Becker Aff., Ex. A. Count One charged Schaefer with attempting to disseminate indecent material to minors in the first degree, in violation of New York Penal Law, Sections 110 and 235.22, based on his sexually explicit instant messaging conversations with "Mary." *Id.*; *see also* Everdell Aff., Ex. A. Count Two charged Schaefer with attempted sexual abuse in the second degree, in violation of New York Penal Law, Sections 110 and 130.60(2), based on his attempt to subject "Mary" to mouth-to-mouth contact. *Id.* Count Three charged Schaefer with attempted sexual abuse in the second degree, in violation of New York Penal Law, Sections 110 and 130.60(2), based on his attempt to subject "Mary" to contact with his penis. *Id.* Count Four charged Schaefer with endangering the welfare of a child, in violation of New York Penal Law, Section 260.10(1), based on his decision to bring his infant son to the meeting with "Mary" on July 20, 2005. *Id.* Count Five charged Schaefer with attempting to endanger the welfare of a child, in violation of New York Penal Law, Sections 110 and 260.10(1), based on his meeting with "Mary" on July 20, 2005. *Id.* Schaefer was arraigned on these charges on or about March 21, 2006. Becker Aff., Ex. B.

Schaefer brought a motion to dismiss these charges, which was heard by The Honorable James Yates in New York Supreme Court, New York County, on January 25, 2007. Everdell Aff., Ex. A. Justice Yates dismissed Count One on the grounds that he was bound by the decision of the Appellate Division, Second Department in *People* v. *Kozlow*, 31 A.D.3d 788, 821 N.Y.S.2d 212 (2d Dep't 2006), which held that the statue prohibiting dissemination of indecent material to minors did not extend to cover sexually explicit conversations alone, and required

transfer of visual "sexual images." *Id.* at 2-5; *see also Kozlow*, 31 A.D.3d at 788.[2]  Justice Yates

also dismissed Count Two on the grounds that he "[did not] believe that the attempted sexual

abuse statute is meant to include a request to kiss a person, mouth to mouth."  Everdell Aff., Ex.

A at 5.[3]  Justice Yates also dismissed Count Four on the grounds that he did not believe that

taking an infant to a park where no dangerous activity was taking place was sufficient to charge

endangering the welfare of a child.  Everdell Aff., Ex. A at 5-6.  Justice Yates upheld Counts

Three and Five.  *Id.*  The New York County District Attorney's Office decided not to appeal

Justice Yates' decision and, on or about April 5, 2007, dismissed the remaining counts following

the filing of a federal complaint by the Government.  Becker Aff., Ex. B.

## II.    FEDERAL PROCEEDINGS

### A.    The Complaint and the Indictment

On March 21, 2007, the Government filed a one count Complaint, 07 Mag. 444, charging

Schaefer, the defendant, with using a computer and the Internet to attempt to entice, induce,

coerce, and persuade a minor to engage in sexual activity in violation of New York State laws, a

---

[2]  The Second Department's decision has since been overturned by the Court of Appeals in *People* v. *Kozlow*, 8 N.Y.3d 554, 870 N.E.2d 118 (2007).  *See Kozlow*, 8 N.Y.3d at 556 (holding that a defendant may be prosecuted for disseminating indecent material to minors even if the communications with the minor "contain[] no nude or sexual images").

[3]  To the extent that it bears on the Court's decision, the Government respectfully disagrees with Justice Yates' dismissal of this count.  Although no state appellate court has resolved this issue, the vast majority of the lower state courts have found that kissing a minor on the mouth would qualify as sexual abuse under this statute.  *See James* v. *Mukasey*, — F.3d —, 2008 WL 763158, at *6 (2d Cir. Mar. 25, 2008) (listing state cases); *People* v. *Miller*, — N.Y.S.2d —, 2008 WL 496060, at * 4-*5 (Kings Co. Crim. Ct. Feb. 21, 2008) (same); *People* v. *Valentin*, 17 Misc. 3d 1132(A), 2007 WL 4170857, at *2 (Kings Co. Crim. Ct. Nov. 9, 2007) (same); *but see People* v. *Kittles*, 102 Misc. 2d 224, 423 N.Y.S.2d 107 (Suffolk Co. Ct. 1979) (kissing does not qualify as "sexual contact" under Section 130.00 of the New York Penal Law).

violation of Title 18, United States Code, Section 2422(b).  The defendant was arrested and presented on March 23, 2007, before Magistrate Judge James C. Francis.  The defendant was released on a $100,000 personal recognizance bond, co-signed by his wife and father-in-law, and secured by $10,000 in cash.  The defendant's bail conditions included home detention with electronic monitoring.  The defendant was also prohibited from having any unsupervised conduct with minors.

On or about June 4, 2007, a Grand Jury in the Southern District of New York returned a one count Indictment, 07 Cr. 498 (the "Indictment"), charging Schaefer with the identical conduct set forth in the Complaint, in violation of the same statute, Title 18, United States Code, Section 2422(b).  Schaefer was arraigned on or about June 6, 2007.

C.    **Post-Indictment Discovery**

In a letter to the defendant's counsel dated June 20, 2007, the Government provided discovery, which included: (i) the Indictment and Complaint in the federal case against the defendant; (ii) the indictment and criminal court complaint in the state case against the defendant; (iii) the search warrant and supporting affidavit for the defendant's America Online ("AOL") account; (iv) documents associated with the defendant's AOL and Yahoo! accounts; (v) transcripts of the AOL instant messaging chats between the defendant and UC-1; (vi) the emails sent between the defendant and UC-1; (vii) a cassette containing an audio recording of the telephone call between the defendant and UC-2; (viii) a CD containing an audio recording of the meeting between the defendant and UC-2, photographs of that meeting, and an audio recording of the statement provided by the defendant to law enforcement, (ix) a CD containing materials provided by AOL in response to the search warrant; (x) a CD containing the results from a

forensic examination of the defendant's computer; and (xi) a CD containing the defendant's statements to law enforcement agents and the New York County District Attorney's Office.

On or about July 2, 2007, the defendant sent the Government a letter requesting discovery, *Brady* material, and a bill of particulars. The Government responded to the defendant's request in a letter dated September 2, 2007. In its letter, the Government noted that discovery had already been produced to the defendant on June 20, 2007, and that it was aware of its continuing responsibility to provide discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure. The Government also denied the defendant's request for a bill of particulars on the grounds that it was improper. Finally, the Government stated that it would provide any *Brady* material, if any came to light, in a timely fashion.

### D.    The Superseding Indictment

On or about April 2, 2008, a Grand Jury in the Southern District of New York returned a one count Superseding Indictment, S1 07 Cr. 498 (the "Superseding Indictment"). The Superseding Indictment reads:

> In on or about July 2005, in the Southern District of New York and elsewhere, ALAN SCHAEFER, a/k/a "AlanSnyc39@aol.com," a/k/a "alansnyc2@hotmail.com," a/k/a "alansnyc39@yahoo.com," the defendant, unlawfully, willfully and knowingly, did use a facility and means of interstate commerce to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense, and did attempt so to do, to wit, SCHAEFER used a computer, a telephone, and the Internet to attempt to entice, induce, coerce, and persuade a minor to engage in sexual activity in violation of New York State Penal Law Sections 130.20(1) and (2), 130.25(2), 130.30(1), 130.40(2), 130.45(1), and 130.60(2).

Arraignment on the Superseding Indictment is pending.

11

## ARGUMENT

I.    **SECTION 2422(b) IS NOT UNCONSTITUTIONALLY VAGUE OR OVERBROAD ON ITS FACE OR AS APPLIED TO THE DEFENDANT**

A.    **Applicable Law**

1.    **Elements of the Offense**

Title 18, United States Code, Section 2422(b) provides, in relevant part, that

> Whoever, using the mails or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined and imprisoned under this title.

18 U.S.C. § 2422(b). Accordingly, the attempt provision of the statute has four elements: (1) that the defendant knowingly used a facility of interstate commerce to attempt to persuade, induce, entice or coerce an individual under the age of eighteen to engage in sexual activity; (2) that the defendant believed that such individual was less than eighteen years of age; (3) that if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the law of, in this case, New York State; and (4) that the defendant acted knowingly and willfully. *See* Sand's Pattern Jury Instructions, Instruction 64-11 (referencing the Eleventh Circuit's pattern instruction for an attempt to violate this statute); *see also United States* v. *Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006) (the government must prove four elements under § 2422(b): "that an individual (i) used a facility of interstate commerce; (ii) to knowingly . . . attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature"). In enacting this statute, Congress "made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts

themselves." *United States* v. *Bailey*, 228 F.3d 637, 639 (6th Cir. 2000); *see also Brand*, 467 F.3d at 202 ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."); *United States* v. *Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005) ("Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act.").

### 2.    Vagueness and Overbreadth

Generally, courts will not review the constitutional validity of a statute on its face unless the vagueness challenge involves First Amendment issues. *See United States* v. *Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) ("vagueness challenges that do not involve the First Amendment must be examined in light of the specific facts of the case at hand and not with regard to the statute's facial validity"); *United States* v. *Venturella*, 391 F.3d 120 (2d Cir. 2004) (recognizing holding that where "'the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only . . . in light of the specific facts of the case at hand and not with regard to the statute's facial validity" (citing *United States* v. *Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003), *cert. denied*, 543 U.S. 809 (2004)). Where the court conducts such a review, however, the challenger must show that the statute is "'impermissibly vague in all of its applications.'" *Rybicki*, 354 F.3d at 130 (quoting *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

In *Kolender* v. *Lawson*, 461 U.S. 352 (1983), the Supreme Court fashioned a two-part test that "requires that a penal statute define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 357; *accord Hill* v. *Colorado*, 530

U.S. 703, 732 (2000); *Rybicki*, 354 F.3d at 129. Under this test, a statute is not vague as applied if it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States* v. *Petrillo*, 332 U.S. 1, 8 (1947); *accord United States* v. *Brunshtein*, 344 F.3d 91, 98 (2d Cir. 2003), *cert. denied*, 543 U.S. 823 (2004). "[D]ue process does not require 'impossible standards' of clarity." *Kolender*, 461 U.S. at 361 (quoting *Petrillo*, 332 U.S. at 7-8); *see also Posters 'N' Things, Ltd.* v. *United States*, 511 U.S. 513, 525 (1994) (upholding statute with "relatively clear guidelines as to prohibited conduct"); *United States* v. *Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999) ("some ambiguity in a statute's meaning is constitutionally tolerable"). "[B]ecause we are '[c]ondemned to the use of words, we can never expect mathematical certainty from our language.'" *Hill*, 530 U.S. at 733 (quoting *Grayned* v. *City of Rockford*, 408 U.S. 104, 110 (1972)).

The concern about notice, which underlies the first part of the vagueness test, "is ameliorated" if the statute "contains a scienter requirement." *Hill*, 530 U.S. at 732 (rejecting vagueness challenge to state criminal statute that only applies to a person who "knowingly" approaches within eight feet of another person near a health-care facility, without that person's consent, "for the purpose of engaging in oral protest, education or counseling"); *United States v. Strauss*, 999 F.2d 692, 698 (2d Cir. 1993) (rejecting challenge to federal statutes making it a felony to mislabel dog food "with the intent to defraud or mislead"). A statute passes the second part of the vagueness test so long as Congress has "establish[ed] minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358. "'As always, enforcement requires the exercise of some degree of police judgment.'" *Hill*, 530 U.S. at 733 (quoting *Grayned*, 408 U.S. at 114).

14

Moreover, "'every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Chestaro*, 197 F.3d at 605 (quoting *Chapman* v. *United States*, 500 U.S. 453, 464 (1991)); *accord United States* v. *Harriss*, 347 U.S. 612, 618 (1954); *see also Parker* v. *Levy*, 417 U.S. 733, 757 (1974) ("'The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language. Indeed, we have consistently sought an interpretation which supports the constitutionality of legislation.'") (quoting *United States* v. *Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963) (citations omitted)).

Finally, overbreadth challenges based on First Amendment grounds are narrowly circumscribed. Because of the wide-ranging effects of striking down a statute on its face at the request of one whose own conduct may be punished consistent with the First Amendment, the Supreme Court has recognized that the overbreadth doctrine "is, manifestly, strong medicine," to be employed "sparingly and only as a last resort." *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612-13 (1973). The "overbreadth doctrine only 'prohibits a statute from making criminal otherwise innocent and constitutionally protected conduct.'" *United States* v. *Thomas*, 410 F.3d at 1243 (citation omitted).

**B.**     **Discussion**

The defendant attacks Section 2422(b) on its face and as applied to him on three grounds: (1) the defendant argues that the statute incorporates a "probable cause standard," (2) the defendant appears to argue that the statute's failure to define the term "sexual activity" renders it void and subjects it to a "virtually unlimited" number of state statutes that may, in and of

15

themselves, be vague and overbroad, and (3) the defendant argues that the statute is "invalid as applied" in the instant offense because the Indictment contains "no factual statement" defining "sexual activity" in this case and does not specify the "violation of State law." Br. at 15-28. Each of these arguments should be rejected, as they were by Judge Crotty in *United States* v. *McDarrah*, No. 05 Cr. 1182 (PAC), 2006 WL 1997638 (S.D.N.Y. Jul. 17, 2006). Furthermore, the defendant's argument regarding the lack of specific references to New York State law is now moot in light of the Superseding Indictment.[4]

### 1.    The Statute Does Not Incorporate a Probable Cause Standard

Defendant's argument that Section 2422(b) incorporates a "probable cause" standard borders on frivolous. Citing no case law, Schaefer claims that Section 2422(b) subjects to federal prosecution "anyone whose conduct creates a subjective basis to merely 'charge'" a person "under some unspecified State law that related in some way to persuasion of a minor to engage in 'sexual activity.'" Br. at 17. Such an argument plainly misreads the statute, which, when properly read, reveals that the phrase "for which any person can be charged with a criminal offense," merely provides context to the phrase "sexual activity." The statute requires that if committed, the sexual activity be a crime. *See, e.g., United States* v. *Meek*, 366 F.3d 705, 718 (9th Cir. 2004) (to convict under Section 2422(b), the sexual activity must "constitute a criminal offense"); *Brand,* 467 F.3d at 201-02 (under § 2422(b) the government must prove that the proposed sexual activity was "criminal").

---

[4] The original Indictment was sufficient as a matter of law, but the Government superceded in an abundance of caution and to avoid unnecessary litigation on this issue. *See, e.g., United States* v. *Candiano*, No. 05 Cr. 54, 2006 WL 229200 (N.D. Ill. Jan. 31, 2006) (finding indictment charging Section 2422(b) sufficient even though it did not specify the "criminal offense" that would have been violated).

Indeed, the statute requires the Government to prove that, had the sexual activity between Schaefer and "Mary" occurred, Schaefer would have violated a New York State criminal law. *See* Sand's Pattern Jury Instructions, Instruction 64-13 (recognizing that the statute incorporates state sexual abuse offenses and noting that if the sexual activity was "not chargeable (for example, because the victim had reached the age of consent under state law), then this element cannot be satisfied as a matter of law"); *cf. United States* v. *Patten*, 397 F.3d 1100, 1103-1104 (8th Cir. 2005) (recognizing that sexual activity discussed in chats may have be lawful in Minnesota, but were not in North Dakota and holding that there was sufficient evidence to support the jury's verdict).

As Judge Crotty noted in *McDarrah*, the Second Circuit rejected a similar argument related to the RICO statute in *United States* v. *Coonan*, 938 F.2d 1553 (1993), in which the Court found that the language "chargeable under state law," which was contained in the definition of racketeering activity under the statute, merely served to "define in a more generic sense, the wrongful conduct that constitutes the predicates for a federal rackeetering charge." *McDarrah*, 2006 WL 1997638, at *6 (discussing *Coonan*, 938 F.2d at 1564). Accordingly, because the enticement statute clearly contemplates sexual activity that would violate another law, Schaefer's position that the phrase "can be charged" incorporates a probable cause determination as an element of this offense is wrong, and the argument should be rejected.

### 2.    The Statute is Not Vague or Overbroad

Schaefer's second attack on the statute appears to be two-fold. First, Schaefer seemingly claims that the statute is "unacceptably vague" because it fails to define "sexual activity." Br. at 21. Second, Schaefer argues that the "virtually unlimited" "incorporation" of State statutes,

many of which are themselves vague and overbroad, renders Section 2422(b) unconstitutional. Br. at 22-25. This two-fold argument simply ignores established Circuit Court decisions to the contrary and should be rejected.

Although Schaefer claims that the language of Section 2422(b) is "unacceptably vague," every Circuit Court to have considered a vagueness challenge to this statute, including the Second Circuit, has found that the statute withstands scrutiny. *See United States* v. *Gagliardi*, 506 F.3d 140, 147-48 (2d Cir. 2007); *United States* v. *Tykarsky*, 446 F.3d 458, 472-73 (3d Cir. 2006); *United States* v. *Thomas*, 410 F.3d 1235, 1243-44 (10th Cir. 2005); *United States* v. *Dhingra*, 371 F.3d 557561-63 (9th Cir. 2004); *United States* v. *Meek*; 366 F.3d 705, 722 (9th Cir. 2004); *United States* v. *Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003); *United States* v. *Bailey*, 228 F.3d 637, 639 (6th Cir. 2000). Indeed, one circuit court specifically found that the phrase "sexual activity for which any person can be charged with a criminal offense" has a "plain and ordinary meaning[]" and is sufficient to put ordinary people on notice as to what would constitute illegal conduct under the statute. *Panfil*, 338 F.3d at 1301; *see also McDarrah*, 2006 WL 1997638, at *5 (noting that "[I]t is clear what the ordinance as a whole prohibits" and adopting the reasoning of *Panfil* regarding the term "sexual activity"). Given this chorus of agreement, Schaefer's contention that the statute is impermissibly vague rings hollow.[5]

Instead, Schaefer attempts to inject vagueness into a statute where there is none by piling speculative hypothetical upon speculative hypothetical purporting to demonstrate the

---

[5] The defendant points out that many circuit courts, including the Second Circuit, which upheld the statute were considering the "vagueness" of the terms "persuade," "induce," "entice," and "coerce," not "sexual activity." Br. at 25; *see also Gagliardi*, 506 F.3d at 147; *Tykarsky*, 446 F.3d at 473; *Panfil*, 338 F.3d at 1301. Yet, the defendant offers no argument why the term "sexual activity" is any more "vague" than these terms.

incorporation of "state statutes that potentially infringe upon protected activity or speech under the First Amendment." Br. at 22-25. Similar arguments have been rejected by the circuit courts. *See, e.g., Dhingra,* 371 F.3d at 562 (rejecting argument that Planned Parenthood could be prosecuted under § 2422(b) for giving teenagers information about birth control, noting that such an "attenuated argument glosses over the clear language of the statute, which requires the combination of three key elements"); *Panfil,* 338 F.3d at 1301 (rejecting argument that parent could be prosecuted under Section 2422(b) for advising underage child about birth control).

Furthermore, as Judge Crotty noted in *McDarrah* when rejecting this same argument, "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *McDarrah,* 2006 WL 1997638, at *5 n.3 (quoting *Hill* v. *Colorado,* 530 U.S. 703, 733 (2000)). It is clear that Section 2422(b) criminalizes the enticement of a thirteen-year old girl to engage in sexual activity, including intercourse, oral sex, and sexual contact – precisely the activity that Schaefer attempted to entice "Mary" to engage in. His actions, therefore, are *unquestionably* covered by this statute. Hence, Schaefer has come nowhere close to establishing that Section 2422(b) is "'impermissibly vague in all of its applications.'" *United States* v. *Rybicki,* 354 F.3d 124, 130 (2d Cir. 2003) (quoting *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982)).

Moreover, there can be no ambiguity of the term "sexual activity" as applied to this case, as the New York Penal Law clearly defines terms associated with sex offenses. *See* N.Y. Penal Law § 130.00. For example, "'sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight." N.Y. Penal Law § 130.00(1). Other defined terms include "oral

sexual conduct," and "sexual contact." N.Y. Penal Law §130.00(2)(a) & (3).  New York Penal

Law specifically states that, with respect to sex offenses, a "person is deemed incapable of

consent when he or she is (a) less than seventeen years old." *See* N.Y. Penal Law § 130.05(3)(a).

A series of definitions establishing the elements for sex-related offenses follow these definitions.

Such offenses include, but are not limited to:

- **Sexual Misconduct**: "A person is guilty of sexual misconduct when: he or she engages in sexual intercourse with another person without his or her consent" or "engages in oral sexual conduct or anal sexual conduct with another person without such person's consent."  N.Y. Penal Law §130.20(1) and (2).

- **Rape in the Second Degree**: "A person is guilty of rape in the second degree when: being eighteen years old or more, he or she engages in sexual intercourse with another person less than fifteen years old." N.Y. Penal Law §130.30(1).

- **Criminal Sexual Act in the Second Degree**: "A person is guilty of criminal sexual act in the second degree when: being eighteen years old or more, he or she engages in oral sexual conduct or anal sexual conduct with another person less than fifteen years old." N.Y. Penal Law §130.45(1).

- **Sexual Abuse in the Second Degree**: "A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such person is: less than fourteen years old." N.Y. Penal Law §130.60(2).

These statutes are not vague, do not involve speech, and do not serve to chill protected activity.

Rather, they seek to criminalize actions targeting children.  Tellingly, had the defendant

successfully enticed "Mary" to engage in the activity discussed, his actions would have violated

these crimes and the others referenced in the Superseding Indictment.

 Indeed, it is perhaps for this reason that the Ninth Circuit rejected an argument similar to

the one proffered by Schaefer.  *Dhingra* rejected a First Amendment attack on the statute on the

grounds that it incorporates local criminal laws, noting that the "fact that various community

standards might apply does not make the statute unconstitutional."  *Dhingra*, 371 F.3d at 563.

Moreover, *Dhingra*, addressing a Tenth Amendment claim, notes that the "laws 'for which a person can be charged with a criminal offense," are limited to the laws of "the venue that would have jurisdiction of over the defendant." *Id*. at 564. Accordingly, the statute does not incorporate "unlimited" state laws – it simply incorporates laws made applicable by a defendant's enticement.

To the extent that Schaefer argues that the statute is unconstitutional because of the potential for arbitrary enforcement, he is wrong. Section 2422(b) requires that the defendant "'knowingly' engage in the prohibited conduct." *Gagliardi*, 506 F.3d at 147. The inclusion of a scienter requirement "narrows the scope of § 2422(b) as well as the ability of prosecutors and law enforcement officers to act based on their own preferences." *Id.*; *see also Tykarsky*, 446 F.3d at 473 ("The statute's scienter requirement clarifies the law and excludes legitimate activity, including pure speech, from its scope"); *Panfil*, 338 F.3d at 1301 ("[The] scienter requirement discourages 'unscrupulous enforcement' and clarifies § 2422(b)."); *McDarrah*, 2006 WL 1997638, at *5 (concurring with Judge Stein, the District Judge in *Gagliardi*, as to "the clarity of the statute and the near unanimity as to the scope of its application").[6]

Finally, any argument that Section 2422(b) should be struck down on First Amendment overbreadth grounds for its potential to chill protected speech or activity is now foreclosed by the Second Circuit's opinion in *Gagliardi*. In that case, the Court embraced the position of the other circuit courts to have addressed this issue that Section 2422(b) does not chill protected speech

---

[6] The defendant contends that this scienter requirement is not in the text of the statute. Br. at 25. However, the Supreme Court has established a presumption in favor of a scienter requirement for "each statutory element that criminalizes otherwise innocent conduct," such as Section 2422(b). *United States* v. *Coté*, 504 F.3d 682, 686 (7th Cir. 2007) (quoting *United States* v. *X-Citement Video*, 513 U.S. 64, 72 (1994)).

because it prohibits conduct, and does not implicate speech. *Gagliardi*, 506 F.3d at 147-48.  As

the Court stated, "there is no First Amendment right to persuade one whom the accused believes

to be a minor to engage in criminal sexual conduct." *Id.* at 148; *see also Tykarsky*, 446 F.3d at

473 ("There is no First Amendment right to persuade minors to engage in illegal sexual acts");

*Meek*, 366 F.3d at 721 (citing *Bailey*, 228 F.3d at 639) ("inducement of minors to engage in

illegal sexual activity enjoys no First Amendment protection.").

   As such, Section 2422(b) is immune from the Supreme Court's analysis in *Reno* v.

*American Civil Liberties Union*, 521 U.S. 844 (1997), on which the defendant heavily relies

throughout his various arguments.  In contrast to the statute considered by the Supreme Court in

*Reno*, there is no "legitimate speech jeopardized by § 2422 because the statute only criminalizes

conduct, i.e., the targeted inducement of minors for illegal sexual activity." *Meek*, 366 F.3d at

721; *see also Panfil*, 338 F.3d at 1301 (Section 2422(b) does not suffer from the same

"constitutional infirmity" as the statute considered by the Court in *Reno*); *Dhingra*, 371 F.3d at

562 (distinguishing *Reno* and noting Section 2422(b)'s "intent provision, coupled with the

requirement that the purpose of the conduct must be for criminal sexual activity, sufficiently

excludes legitimate activity, including speech, from its scope").  Because the crime is the

enticement itself, the "speech" by the defendant "is merely the vehicle by which a pedophile

ensnares the victim." *Meek,* 366 F.3d at 721; *see also Bailey*, 228 F.3d at 639 (Section 2422(b)

only "affects those who intend to target minors: it does not punish those who inadvertently speak

with minors or who, as in *Reno*, post messages for all internet users, either adults or children, to

seek out and read at their discretion"); *Dhingra*, 371 F.3d at 561-561 (Section 2422(b) does not

"criminalize speech that is received by minors but is not spoken with the intent to persuade, induce, entice, or coerce a minor into illegal sexual activity").

For these reasons, the defendant's vagueness and overbreadth arguments are without merit and should be rejected.

### 3.    The Statute is Not Invalid As Applied

Schaefer's third argument, that the statute is invalid as applied because the Indictment contains no factual statement setting forth the sexual activity is wrong as a matter of law.  The Second Circuit has held that where "the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *United States* v. *Nadi*, 996 F.2d at 550-51 (rejecting the defendant's vagueness argument as applied because the defendant's "conduct was clearly proscribed by the statute," citing *Hoffman Estates*, 455 U.S. at 495 n.7).  In this case, had Schaefer completed the sexual activity he discussed on the instant message chats and in the telephone call with "Mary," his conduct would be a clear violation of New York State criminal law.  As such, Schaefer is precluded from arguing that the statute, as applied to him, is vague.  Moreover, the Superseding Indictment in this case provides notice to Schaefer of the New York State Penal Law statutes he would have violated had he been successful in enticing "Mary" into certain, or all, of the various sexual activity discussed during the charged time period.  Accordingly, his vagueness challenge must fail. *See McDarrah*, 2006 WL 1997638, at *6-*7 (rejecting defendant's as applied vagueness challenge in analogous case).

II.    **THE INDICTMENT IS VALID ON ITS FACE**

The defendant's argument that the Indictment lacks essential allegations of fact and does not provide adequate notice of the offense charged is wrong. Br. at 10-15. The Indictment and Superseding Indictment are valid on their face, and defendant's motion should be denied.

A.    **Applicable Law**

An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). As the Second Circuit repeatedly has held, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotation marks omitted); *see also United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002).

B.    **Discussion**

Here, the Superseding Indictment tracks the language of the child enticement statute, 18 U.S.C. § 2422(b), and specifically states what the defendant did to violate that statute, alleging that "[i]n or about July 2005, in the Southern District of New York and elsewhere," the defendant "used a computer, a telephone, and the Internet to attempt to entice, induce, coerce, and persuade a minor to engage in sexual activity in violation of New York State Penal Law Sections 130.20 (1) and (2), 130.25(2), 130.30(1), 130.40(2), 130.45(1), and 130.60(2)." As did the Indictment,

24

the Superseding Indictment goes beyond merely citing the elements of the statute.  It contains all of the statutory elements of the offense charged and is sufficiently specific to both inform the defendant of the claims against him and protect him against any possible double jeopardy concerns.  *See* Br. at 11-12.  This is all that is required by law.  *See, e.g., United States* v. *Veliz*, No. 03 Cr. 1473 (GEL), 2004 WL 964005, at *1 (S.D.N.Y. May 5, 2004) ("brief and conclusory" indictment that tracks statute and gives time and place of crime is sufficient).

Furthermore, at the time the Indictment was charged, and well before the Superseding Indictment was returned, the Government had already provided the defendant with a lengthy, detailed Complaint, setting forth the factual bases for the charges against him.  *See* Factual Background, *supra*.  Following the Indictment, the Government produced discovery, which included, among other things, transcripts of the three instant messaging conversations between the defendant and UC-1, a copy of the defendant's recorded telephone conversation with UC-2 on July 19, 2005, an audio recording of his meeting with UC-2 on July 20, 2005, and copies of the defendant's post-arrest statements to law enforcement officers and to the New York County District Attorney's Office.  *Id.*  Although discovery alone may not cure a defective indictment, there can be no question that the defendant here was and is sufficiently apprised of the charges against him.  *See United States* v. *Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (refusing to dismiss indictment where additional discovery provided by Government sufficiently protected defendant's rights and gave adequate opportunity to prepare defense); *United States* v. *Mermelstein*, 487 F. Supp. 2d 242, 249 (E.D.N.Y. 2007) (refusing to dismiss indictment noting that indictment was supplemented by additional information from the Government).

Even assuming that the original Indictment were deficient, the inclusion in the Superseding Indictment of the particular New York State Penal Law statutes that the defendant would have violated, had the sexual activity occurred, cures any lingering defect in the charging instrument. *See United States* v. *McDarrah*, No. 05 Cr. 1182 (PAC), 2006 WL 1997638, at \*7-\*8 (S.D.N.Y. July 17, 2006) (finding virtually identical superseding indictment "cure[d] whatever deficiency might have existed in this case"). The inclusion of these statutes in the Superseding Indictment renders moot the defendant's concern that the grand jury did not consider in their deliberations the particular state statutes at issue in this case, *see* Br. at 12, and eliminates any need for the defendant to speculate as to the criminal conduct he must be prepared to defend. *See id.* at 12-13.[7]

Not only is the Superseding Indictment legally sufficient, there is also *no* risk that the defendant was charged with innocent conduct. The defendant cites several examples of sexual activity that are not unlawful under New York State law, including consensual sex with a 17-year-old minor, persuading a minor to engage in sexual activity with another minor, and inducing a minor to engage in sexual education activities. *See* Br. 14-15. It is abundantly clear from the Penal Law statutes cited in the Superseding Indictment and from the discovery in this case that

---

[7] The defendant's assertion that a federal indictment charging that the defendant attempted to entice a minor to engage in sexual activity in violation of New York State Penal Law Section 130.60(2) would be inconsistent with Justice Yates' decision in the state case is incorrect. *See* Br. at 12. First, Justice Yates upheld Count Three of the state indictment, which charged the defendant with attempted sexual abuse in the second degree, in violation of New York Penal Law, Sections 110 and 130.60(2), based on his attempt to subject "Mary" to contact with his penis. *See* Becker Aff., Ex. A; Everdell Aff., Ex. A. Second, it is well settled under the "dual sovereignty" principle that the federal government may prosecute a defendant following a state prosecution arising out of the same events, even if the state prosecution ended in acquittal. *See United States* v. *Sewell*, 252 F.3d 647, 251 (2d Cir. 2001); *United States* v. *Arena*, 180 F.3d 380, 399 (2d Cir. 1999).

these types of activities are not the sort of "sexual activity" at issue in this case. The defendant's

concern that he may be convicted based on conduct that is not criminal is therefore specious.

The Indictment and Superseding Indictment are sufficient as a matter of law, and the

motion to dismiss for an alleged failure to state essential elements should be rejected.

## III.    THE GOVERNMENT DID NOT BREACH NEW YORK STATE GRAND JURY SECRECY LAWS AND A HEARING IS NOT WARRANTED

The defendant next argues that the Government may have violated New York's grand

jury secrecy laws by obtaining from the New York County District Attorney's Office, without a

court order, documents that "must have been introduced before the New York State grand jury

that indicted him." Br. at 30. The defendant further asserts, without citing a single case in

support, that a hearing is warranted to determine whether these documents, which include the

instant message chats and recorded conversations between the defendant and "Mary," should be

suppressed in the federal case against him. Br. at 31. This argument is meritless for several

reasons and should be rejected.

First, even assuming the truth of the defendant's allegations, he has not established that a

violation of New York's grand jury secrecy laws occurred. The defendant does not allege that

the Government obtained grand jury testimony or minutes from the District Attorney's Office.

Rather, he claims that the Government received documents and other tangible evidence, such as

the instant messaging chats and the recorded conversations, which were generated during the

investigation of the defendant by the NYPD. These documents were not obtained pursuant to the

power of the grand jury and are not subject to grand jury secrecy. Contrary to the defendant's

assertions, *see* Br. at 30, "documents are *not* cloaked with secrecy merely because they are

presented to the grand jury." *United States* v. *Lartey*, 716 F.3d 955, 964 (2d Cir. 1983)

27

(emphasis added).  Documents such as these, which are the "product of an independent investigation" and which have an "independent existence apart from the proceedings of the grand jury," are not subject to grand jury secrecy and can be disclosed as long as they do not reveal anything about the grand jury proceedings.  *People* v. *Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 136 Misc. 2d 612, 616 (N.Y. Co. Ct. 1987); *see also DiLeo* v. *Commissioner of Internal Revenue*, 959 F.2d 16, 19 (2d Cir. 1992) ("[W]hen testimony or data is sought for its own sake – for its intrinsic value in the furtherance of a lawful investigation – rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury . . .") (quoting *United States* v. *Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960)); *Lartey*, 716 F.2d at 964 ("[U]nless information reveals something about the grand jury proceedings, secrecy is unnecessary.") (quoting *United States* v. *Stanford*, 589 F.2d 285, 291 (7th Cir. 1978)).

　　　Second, even assuming, *arguendo*, that a violation of New York's grand jury secrecy laws occurred, at most what Schaefer has alleged is that the *Assistant District Attorney* in charge of his state case, not the United States Attorney's Office, violated CPL § 190.25(4) by disclosing grand jury documents to the United States Attorney's Office without a court order.  He has not alleged that the United States Attorney's Office did anything except ask for and receive those documents.  Despite the defendant's attempts to label this "collusion," Br. at 31, the law is clear that it is the responsibility of the District Attorney's Office to obtain the proper court order before releasing any information.  *See United States* v. *Mohanlal*, 867 F. Supp. 199, 201 (S.D.N.Y. 1994) (denying motion to suppress and noting that if grand jury transcript had been improperly turned over to a federal agency by the Bronx County District Attorney's Office, then "it was the

responsibility of . . . the Bronx County District Attorney to obtain the court order"). Hence, even if there were a violation of state law, it was not the Government's violation and there is no remedy available for the defendant in his federal case.

Third, even assuming, *arguendo*, that the defendant could seek some form of relief in his federal case for this alleged violation of state law, it would not be suppression of the documents received from the District Attorney's Office. The exclusionary rule operates only to suppress evidence obtained in violation of the defendant's Fourth Amendment rights. Suppression is not the appropriate remedy for non-constitutional violations, such as violations of federal rules or state laws. *See United States* v. *Pangburn*, 983 F.2d 449, 455 (2d Cir. 1993) ("[C]ourts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude.") (quoting *United States* v. *Burke*, 517 F.2d 377, 386-87 (2d Cir. 1975) (Friendly, J.)); *Mohanlal*, 867 F. Supp. at 201 (refusing to extend the exclusionary rule to a possible violation of CPL § 190.25(4)). Indeed, it is well settled that evidence obtained in violation of state law, but not in violation of federal constitutional protections, is admissible in federal proceedings. *See United States* v. *Pforzheimer*, 826 F.2d 200, 202-204 (2d Cir. 1987); *United States* v. *Algea*, No. 3:99 Cr. 193 (AHN), 2000 WL 92351, at *3 (D. Conn. Jan. 5, 2000).

Finally, even assuming, *arguendo*, that a constitutional violation did take place and that the exclusionary rule were available as a remedy to the defendant in his federal case, the documents still should not be suppressed because the Government would have inevitably discovered them. According to the doctrine of "inevitable discovery," illegally obtained evidence should not be suppressed "'if the government can prove that the evidence would have been obtained inevitably' without the constitutional violation." *United States* v. *Heath*, 455 F.3d

52, 55 (2d Cir. 2006) (citing *Nix* v. *Williams*, 467 U.S. 431, 447 (1984)).  Here, there is

absolutely no question that the Government would have obtained the documents on its own.  Had

the District Attorney's Office refused to share its case files, the Government would have simply

issued its own grand jury subpoena to the District Attorney's Office to obtain the materials.  *See*

*In re Dillon*, 824 F. Supp. 330, 333-34 (W.D.N.Y. 1992) ("[S]tate law provisions relating to

grand jury secrecy do not preclude a federal grand jury from obtaining state grand jury records

pursuant to subpoena.").  Alternatively, the Government would have obtained copies of the

instant messaging chats, the recorded conversations, and the rest of the police paperwork from

the NYPD officers in charge of the investigation and issued its own grand jury subpoenas for the

remainder of the materials.  Either way, once the decision had been made to pursue the case, the

Government would have collected the necessary documents with, or without, the assistance of

the District Attorney's Office.

For these reasons, taking the defendant's allegations at face value, he has not established

that a violation of New York grand jury secrecy rules occurred, or that suppression of the

documents should follow if, in fact, a violation did occur.  Accordingly, a hearing on the

suppression issue is not warranted and should be denied.

## IV.   DEFENDANT'S REQUEST FOR A BILL OF PARTICULARS SHOULD BE DENIED

Finally, Schaefer seeks a bill of particulars regarding various enumerated items.  This

request should be denied.

A.    **Applicable Law**

1.    **Bill of Particulars**

The proper scope and function of a bill of particulars is to provide sufficient details of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense.  Fed. R. Crim. P. 7(f); *see United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required.  *See Bortnovsky*, 820 F.2d at 574; *United States* v. *Spy Factory*, 960 F. Supp. 684, 690-91 (S.D.N.Y. 1997); *see also United States* v. *Chen*, 378 F.3d 151, 163 (2d Cir. 2004) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.").  The ultimate test is whether the information sought is necessary for the defense, not whether it would be helpful to the defendant in preparing for trial.  *See United States* v. *Percan*, No. 98 Cr. 392 (AGS), 1999 WL 13040, *5 (S.D.N.Y. Jan. 13, 1999).

The Government is not required to "particularize all of its evidence," *United States* v. *Cephas*, 937 F.2d 816, 834 (2d Cir. 1991); *Torres*, 901 F.2d at 234 ("acquisition of evidentiary detail" is not the function of a bill of particulars) (quotation marks and citation omitted), to disclose the precise manner in which the crimes charged in the Indictment were committed, *see United States* v. *Andrews*, 381 F.2d 377, 378 (2d Cir. 1967); *Torres*, 901 F.3d at 233-34 (demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pre-trial discovery), or to provide the defendant with a preview of the

31

Government's case or legal theory. *United States* v. *Muyet*, 945 F. Supp. 586, 598-99 (S.D.N.Y. 1996). The purpose of the bill of particulars

> is to inform the defendant as to the crime for which he must stand trial, not to compel disclosure of how much the government can prove and how much it cannot or to foreclose the government from using proof it may develop as the trial approaches.

*United States* v. *Malinsky*, 19 F.R.D. 426, 428 (S.D.N.Y. 1956).

The decision to order the Government to provide a bill of particulars rests within the sound discretion of the district court and in "'exercising this discretion, the court must examine the totality of the information available to the defendant – through the indictment, affirmations, and general pre-trial discovery – and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted.'" *United States* v. *Carrington*, No. 02 Cr. 897, 2002 WL 31496199, *1 (S.D.N.Y. Nov. 7, 2002).

### 2.    Grand Jury

It is well settled that the grand jury's actions are presumed valid. *See Hamling* v. *United States*, 418 U.S. 87, 138 n.23 (1974); *see also Torres,* 901 F.2d at 232; *United States* v. *Jailall*, 00 Cr. 069, 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000). Moreover, grand jury proceedings are shrouded in secrecy and as such, a defendant is only entitled to obtain access to grand jury materials upon a showing that grounds "may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. Pro. 6(e)(3)(E)(ii). Courts have therefore required that a defendant seeking such information show a "'particularized need' that outweighs the government's strong interest in the secrecy of grand jury proceedings." *See Jailall*, 2000 WL 1368055 at *2 (quoting *United States* v. *Sells Eng'g*, 463 U.S. 418, 443 (1983)). "This requirement extends to legal instructions given to the grand jury." *Id.*

32

Given the presumption of regularity and the strong interest in maintaining grand jury secrecy, the standard applied to disclosure of grand jury material is "'stringent.'" *Jailall*, 2000 WL 1368055, at *2 (quoting *United States* v. *Trochelman*, No. 98 Cr. 1276, 1999 WL 294992, *2 (S.D.N.Y. May 11, 1999)).  As such, mere "'[s]peculation and surmise as to what occurred before the grand jury' are not sufficient to overcome this presumption" of regularity.  *Id.* (quoting *United States* v. *Wilson*, 565 F. Supp. 1416, 1436-37 (S.D.N.Y. 1983)).  Indeed, a "'review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.'"  *Id.* (citations omitted).

Moreover, in the course of the grand jury presentation, there is no requirement that the prosecuting attorney provide the grand jury with detailed legal instructions about the meaning of each element of the offenses charged.  *See United States* v. *Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) ("under federal law the prosecutor is not obligated to provide legal instruction to the grand jury"); *United States* v. *Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions"); *United States* v. *Kenny*, 645 F.2d 1323, 1346 (9th Cir. 1982) (the "indictment is normally prepared by the prosecutor, who is presumably acquainted with the 'applicable law.' We are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions").

**B.    Discussion**

The defendant argues that he is "entitled to know" the "substantial step" he took "towards commission of the completed crime," and he is further entitled to "assurance that the grand jury that indicted him was properly instructed" on the state law he would have violated had the sexual

33

conduct occurred. Br. at 33.[8] The defendant cites no authority for these alleged entitlements, suggesting only that the because the discovery provided does not specify the sexual activity, a bill of particulars is justified. Br. at 32-33. Schaefer has had possession of the key documents – the instant message conversations and emails between the defendant and UC-1, recordings of the telephone call and meeting between himself and UC-2, and copies of his statements to law enforcement officers and the New York County District Attorney's Office – since approximately mid-June 2007. Together, the detailed Complaint, the Indictment, the Superseding Indictment and the state law provisions identified therein, and the discovery, give the defendant sufficient notice and understanding of the charges against him to allow him, with the exercise of diligence, to evaluate the probative value of documents in the Government's case and their defenses. *See United States v. Trippe*, No. 00 Cr. 585 (SWK), 2001 WL 434849, at *7 (S.D.N.Y. Apr. 27, 2001) ("The Government, however, need not particularize its evidence unless the requested particularization is necessary to give the defendant enough information about the offense charged so that he may, *by the use of diligence*, prepare adequately for trial.") (emphasis added)); *see also Carrington*, 2002 WL 31496199, *2 (denying defendant's request for a bill of particulars because the discovery and indictment "adequately inform [the] [d]efendant of the charges against him").

Accordingly, in considering the defendant's itemized requests, *see* Br. at 33-34, requests (e) and (f) are rendered moot by the inclusion of specific statutory references in the Superseding Indictment. With regard to requests (a) and (b), which seek particularized information about the "substantial step" taken by the defendant and whether he attempted to "persuade" or "induce" or

---

[8] Schaefer also argues that "he is entitled to notice of the specific crime" he could be charged with had the sexual activity occurred. The Superseding Indictment moots this issue.

"coerce" or "entice" the minor, *see* Br. at 34, the defendant is not entitled to this information.
Apart from the fact that an indictment does not need to set forth the facts that constitute the
"substantial step" of an attempt charge, *see McDarrah*, 2006 WL 1997638, at *8 (citations
omitted), the defendant may not use a bill of particulars to obtain an advance view of the
Government's evidentiary theory of the case or to compel the Government to disclose the precise
manner in which the defendant committed the crime charged. *Muyet*, 945 F. Supp. at 598-99.
The same is true of request (d), which asks the Government to specify the exact nature of the
sexual activity referred to in the Indictment. *See* Br. at 34. This very request has been rejected
by two separate courts in the past. *See McDarrah*, 2006 WL 1997638, at *9; *United States* v.
*Kufrovich*, 997 F. Supp. 246, 258 (D. Conn. 1997), *overruled in part on other grounds, United
States* v. *Griffith*, 284 F.3d 338, 351 (2d Cir. 2002).

It is unclear what the defendant is seeking in his final request that the Government specify
"the manner and means by which the grand jury found Mr. Schaefer attempted to 'persuade'" the
minor to engage in sexual activity is somewhat vaguely phrased. However, given the defendant's
previous assertion that he is entitled to "assurance that the grand jury that indicted him was
properly instructed" on the state law he would have violated had the sexual conduct occurred, Br.
at 33, this request can only mean that the defendant is seeking disclosure of grand jury minutes
or, at the very least, the legal instructions given to the grand jury.

The law heavily weighs against the production of a bill of particulars for information
regarding the legal instructions to the grand jury, and other grand jury information. First,
information about grand jury proceedings is not properly posed in the form of a bill of particulars
request, as the purpose of a bill of particulars

> is to supplement the facts contained in the indictment so that a
> defendant is able to identify with sufficient particularity the nature
> of the charges against him, to prepare for trial, to prevent surprise
> and to interpose a plea of double jeopardy should the defendant be
> prosecuted a second time for the same offense.

*United States* v. *Gibson*, 175 F. Supp.2d 532, 536 (S.D.N.Y. 2001). Details regarding legal

instructions to the grand jury in this case would not serve such a purpose. Second, grand jury

proceedings are presumptively valid and a defendant must demonstrate a "particularized need"

for revealing grand jury information, which was not done in this case. Third, prosecutors are not

required to instruct the grand jury on the law. *McDarrah*, 2006 WL 1997638, at *9 (citing

*Lopez-Lopez*, 282 F.3d at 8-9). Indeed, this same request was previously rejected in *McDarrah*

and *Kufrovich*. *See McDarrah*, 2006 WL 1997638, at *9; *Kufrovich*, 997 F. Supp. at 253.

For these reasons, Schaefer's request for a bill of particulars should be swiftly rejected.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court deny the

defendant's motions in their entirety.

Dated:     New York, New York
           May 5, 2008

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York


                        By:   /s/ Christian R. Everdell
                              Christian R. Everdell
                              Assistant United States Attorney
                              Tel: (212) 637-2556
                              Fax: (212) 637-2937

                                    36

CERTIFICATE OF SERVICE

CHRISTIAN R. EVERDELL deposes and says that he is employed in the Office

of the United States Attorney for the Southern District of New York.

That on May 5, 2008, he caused to be served a copy of the foregoing

Government's Memorandum of Law in Opposition to Defendant Alan Schaefer's Pretrial

Motions by Federal Express on:

> Gary G. Becker, Esq.
> Gary G. Becker, LLC
> 200 West 57th Street, Suite 900
> New York, N.Y. 10019
> (212) 981-1980

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C.

Section 1746.


          /s/ C hristian R. Everdell
          CHRISTIAN R. EVERDELL


Executed on:    May 5, 2008
                New York, New York

37