UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
: 
UNITED STATES OF AMERICA :
:
:
-v- : 7-cr-498 (LJL)
:
ALAN SCHAEFER, : ORDER
:
Defendant. :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/6/2020

LEWIS J. LIMAN, United States District Judge:

On April 2, 2020, defendant Alan Schaefer filed an emergency request with this Court asking the Court to grant the following relief: (1) direct the Bureau of Prisons ("BOP") to issue a decision within the next 24 hours as to how Mr. Schaefer will serve his final four months in custody, pursuant to 18 U.S.C. 3624(c)(1) and (2) recommend to the BOP that Mr. Schaefer serve the remainder of his sentence in home confinement, pursuant to 18 U.S.C. 3624(c)(2). *See* Dkt. No. 67.

Almost fifteen years ago, Mr. Schaefer committed a very serious offense. He used an internet messaging service to entice a minor to engage in sexual activity with him in violation of New York State Penal Law. He pleaded guilty on October 22, 2008, and on August 23, 2010, he was sentenced to a term of imprisonment of five years to be followed by five years of supervised release. *See* Dkt. No. 40. He was released from prison on May 15, 2015, and began his five-year supervised release. As a condition of his supervised release, he is required to participate in sex offender treatment and to restrict his access to the internet.

His conduct with respect to minors has not recurred and the record does not reveal any possession or access to child pornography, but he has had trouble in treatment and with supervision. On November 5, 2019, he pled guilty to a violation of the terms of his supervised release. The violation involved his engaging in sexual activity with an adult prostitute. On January 7, 2020, Judge Deborah A. Batts sentenced Mr. Schaefer on a violation of supervised release to a term of imprisonment of six months. *See* Dkt. No. 65. Plainly, Judge Batts believed that such term of imprisonment was necessary to protect the integrity of the law and to ensure that Mr. Schaefer complied with the terms of his supervised release. She did not view it as a death sentence. Judge Batts permitted him to self-surrender on February 6, 2020. *Id*.

Mr. Schaefer is currently housed at the Metropolitan Correctional Center ("MCC") where he has been designated as a "vulnerable" inmate. He is scheduled to complete his sentence on August 4, 2020. He is eligible for home confinement under the First Step Act, 18 U.S.C. 3624(c)(2).

Mr. Schaefer has submitted evidence, which is not disputed, regarding the health risks of his continued confinement at MCC. Mr. Schaefer is 59 years old. He suffers from hypertension for which he is prescribed medication and he was briefly hospitalized last year for a heart irregularity. Guidance from the CDC suggests that these conditions put Mr. Schaefer at higher risk for severe illness from COVID-19. *See* Centers for Disease Control and Prevention, *People who are at higher risk for severe illness*, https://bit.ly/2R3z0AY (including "people of all ages with underlying medical conditions" as among those at higher risk for severe illness, and including "serious heart conditions" and "diabetes" as particular risk factors). There is no cure for Covid-19, no vaccine, and limited testing capability, and the virus spreads quickly through asymptomatic human vectors, who frequently do not know they are infected.

The conditions at the MCC present a grave threat to his life. There are at least four confirmed cases of Covid-19 at MCC and several other inmates are symptomatic. *See USA v. McKenzie*, 2020 WL 1503669, at *2 (S.D.N.Y. Mar. 30, 2020). The conditions of confinement do not permit Mr. Schaefer to practice regular hygiene and abide by the guidelines set by the Centers for Disease Control and Prevention, which strongly recommends social distancing, regular handwashing, and wearing a facemask to prevent illness. *See United States v. Little*, 20 WL 1439979, at *3-4 (S.D.N.Y. Mar. 24, 2020) (describing severely sub-standard and inadequate hygienic provisions and failure to meet "even the most basic recommendations of the CDC for preventing the spread of the coronavirus."); Centers for Disease Control and Prevention, *How to Protect Yourself and Others*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; *Malam v. Adducci*, Case No. 20-cr-10829, ECF No 22 at n.4 (E.D. Mich. April 5, 2020). Although on "lockdown," BOP officers and others enter the facility and even testing workers for high temperatures is insufficient to stem the spread of the disease, as it can spread asymptomatically. *See* Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covidspreads.html?CDC; *Malam*, Case No. 20-cr-10829, at 30-31.

Indeed, correctional officials throughout the Nation are now recognizing (perhaps belatedly) that even the most stringent precautionary measures within an institution cannot protect detainees from this deadly virus. *See Malam*, Case No. 20-cr-10829, ECF No 22 at 24-25. On March 26, 2020, Attorney General Barr issued a memorandum "directing" the Bureau of Prisons to "prioritize the use of . . . various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic" including "home confinement." *See* Dkt. No. 70, Ex. A, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020) ("March 26th Memo"). Just this past Friday, on April 3, 2020, Attorney General Barr issued a further memo directing the BOP to "immediately review all inmates who have COVID-19 risk factors . . . starting with the inmates incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where you determine that COIVD-19 is materially affecting operations." *See* Dkt. No. 72, Ex. A, *Increasing Use of Home Confinement at institutions Most Affected by COVID-19*, Att'y Gen. (April 3, 2020) ("April 3rd Memo"). Pursuant to authority under the CARES Act and a finding by Attorney General Barr that emergency conditions are materially affecting the functioning of the BOP, the memorandum directs BOP to "include [in its review] all at-risk inmates – not only those who were previously eligible for transfer." The memorandum continues, "for all inmates whom you deem suitable candidates for home confinement, [BOP is] directed to immediately process them for transfer and then immediately transfer them following a

14-day quarantine at an appropriate BOP facility, or, in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred." Further, recognizing that "BOP has limited resources to monitor inmates or home confinement . . . ," the memorandum authorizes BOP to "to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety." The memorandum further asserts that "time is of the essence" and directs BOP to "implement this Memorandum as quickly as possible and keep me closely appraised of your progress." Finally, addressing concern for public safety and the safety of law enforcement, the memorandum avers that it is essential to continue making "careful, individualized determinations" in the course of maximizing home confinement.

At least two provisions are relevant to Mr. Schaeffer's request. 18 U.S.C. § 3624(c) provides:

> (1) In general.—
>
> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.—
>
> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

Section 12003(b)(2) of the CARES Act gives the BOP the authority to lengthen the maximum time a prisoner may be released on home confinement upon a finding by the Attorney General "that emergency conditions will materially affect the functioning of the Bureau." *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). On Friday night, General Barr made the requisite finding that "emergency conditions are materially affecting the functioning of the Bureau of Prisons." *See* April 3rd Memo.

In addition, 18 U.S.C. § 3622 provides:

> The Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period if such release appears to be consistent with the purpose for which the sentence was imposed and any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2), if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to—

> (a) visit a designated place for a period not to exceed thirty days, and then return to the same or another facility, for the purpose of--
> > (1) visiting a relative who is dying;
> > (2) attending a funeral of a relative;
> > **(3) obtaining medical treatment not otherwise available;**
> > (4) contacting a prospective employer;
> > (5) establishing or reestablishing family or community ties; or
> > **(6) engaging in any other significant activity consistent with the public interest;**

(emphasis added).

Both provisions leave it to the BOP, at least in the first instance, to determine the institution to which Mr. Schaefer is designated or to permit him a furlough. *See* 18 U.S.C. § 3624(c)(1) ("The *Director of the Bureau of Prisons* Shall . . ."); 18 U.S.C. § 3622 (The *Bureau of Prisons* may . . ." (emphasis added). But nothing in the law prevents this Court from recommending release from the MCC and to home detention in the strongest possible language. Indeed, although the Justice Department takes no position on what recommendation the Court should make, it acknowledges that the Court has the power to make a recommendation.

The Court recommends that Mr. Schaefer spend the remainder of the time left on his sentence in home confinement at his apartment in Manhattan and that he spend 14-days in self-quarantine at that apartment. It was not disputed at oral argument this morning that Mr. Schaefer satisfies the standards for home release and is eligible for home release now; the Government took no position in opposition to defense counsel's argument on those points. In the language of the statute, home confinement will provide the most reasonable, and – under the circumstances – perhaps the only opportunity for him to prepare for reentry into the community. Mr. Schaefer is also at a lower risk level. The offense for which his supervised release was violated does not justify him having to serve additional time at the MCC, with the grave risks that imprisonment there presents to his life and his health. As stated above, Judge Batts did not give him a death sentence. The Attorney General recognizes that the BOP can release a defendant to home detention without electronic monitoring if it is not available. Such authority is found in Section 3624(g)(2)(A)(ii), which provides: "If the electronic monitoring of a prisoner . . . is infeasible . . . the Director of the Bureau of Prisons may use alternative means of monitoring a prisoner placed in home confinement that the Director determines are as effective or more effective than . . . electronic monitoring . . . ." The Government indicated at oral argument that it would not oppose such an arrangement. On the facts of this case, the Court recommends that the BOP do so.

In the alternative, if the BOP determines not to exercise its authority under Section 3624(c), the Court recommends that Mr. Schaefer be granted a furlough and be permitted to reside at his New York apartment for a period of at least 30 days (the apparent statutory maximum) (with 14 days of self-quarantine at that apartment) with that period to be extended if possible during the duration of the Covid-19 crisis. The facts presented plainly support a furlough on grounds that Mr. Schaefer can obtain medical treatment at home that would not otherwise be available to him at the MCC. Furlough would further serve the purpose of enabling Mr. Schaefer to "engage[] in . . . [an] activity consistent with the public interest" – namely, shelter in-place and isolate himself from others,

thereby helping limit the spread of the COVID-19 virus.  The Court also cannot ignore the health benefits to him, and to the public at large of his being released.  What another court has said about civil detainees also pertains in this case to this criminal defendant:  "Given the highly unusual and unique circumstances posed by the COVID-19 pandemic and ensuing crisis, 'the continued detaining of aging or ill … detainees does not serve the public interest.'" *Malam*, Case No. 20-cr-10829, ECF No 22 at 42 (quoting *Basank v. Decker*, 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020)).

      The United States Attorneys Office is directed to inform the Court by 6:00 p.m. on April 7, 2020, of the actions taken to inform the BOP of this recommendation and of the actions taken by BOP in response to this recommendation.

4/6/2020

SO ORDERED.

LEWIS J. LIMAN
United States District Judge