

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 22, 2020

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Alan Schaefer*, 07-cr-498 (LJL)

Dear Judge Liman:

      The Government writes in opposition to the defendant's April 21, 2020 motion for immediate release under Title 18, United States Code, Section 3582(c)(1)(A)(i) (the "Motion"). Because fewer than 30 days have elapsed since Schaefer made any request for a reduced term of imprisonment based on the COVID-19 pandemic to the Bureau of Prisons (the "BOP"), this Court lacks statutory authority to grant relief pursuant to 18 U.S.C. § 3582(c). In addition, at this time, there are no "extraordinary and compelling reasons" requiring the defendant's immediate release. Finally, the Section 3553 factors weigh against releasing the defendant who has served only a portion of his six-month sentence. The defendant's underlying offense was attempted sexual enticement of a minor and he violated supervised release by committing another sex crime—paying for prostitution. Accordingly, the extraordinary remedy of compassionate release is not warranted and the request should be denied. In the alternative, if this Court were to order the defendant released, the conditions of release set by the Court should ensure the defendant's safety and the safety of the public.

    **A. Background**

      In 2010, this Court sentenced the defendant for attempted enticement of a minor. As set forth in the presentence report ("PSR"), in 2005, Schaefer engaged in text communications with a person whom he believed to be a 13-year-old girl. (PSR ¶ 6.) In addition to sending sexually explicit text messages, Schaefer arranged an in-person meeting with the individual whom he believed to be a 13-year old girl. (*Id.* at ¶ 9.) On July 20, 2005, Schaefer met with an undercover officer posing as a 13-year old girl. Schaefer brought his 14-month-old son with him to the meeting. Schaefer was arrested as he and the undercover officer reached the steps to an apartment where the undercover officer said that she lived. (*Id.* at ¶11.) As the Court noted at Mr. Schaefer's sentencing, "[Mr. Schaefer] went with her to what he believed to be her home because he was told her mother would not be home until midnight so they could be alone." (8/23/10 Tr. at 13-14.)

      Following his release, Mr. Schaefer showed a consistent defiance to supervision. In July 2017, Mr. Schaefer's probation officer discovered that Mr. Schaefer was in possession of an undisclosed

cellphone and tablet. In the probation officer's notification to the Court, he stated, "[s]ince August 2016, Mr. Schaefer has failed three polygraph exams." (Ex. A., July 19, 2017 Report.) Specifically, Schaefer lied about not possessing any electronic devices and confessed only when the probation department conducted an unannounced search of his residence.

The Probation Officer again wrote the Court on May 4, 2018, because, "Mr. Schaefer has continued to fail polygraphs." (Ex. B, May 4, 2018 Report.) Again, following a search of his residence, Mr. Schaefer again admitted to using an unauthorized electronic device.

On October 17, 2018, the Probation Officer's monitoring of Mr. Schaefer's electronic device revealed explicit photographs and videos of Mr. Schaefer masturbating. (Ex. C, August 21, 2019 Report.) Mr. Schaefer, when questioned, stated that he sent the videos to an adult via the internet.

Finally, in August 2019, the Probation Office issued a violation report and noted that, "Mr. Schaefer has continued to demonstrate resistance to the sex offender treatment process and has refused to change his behavior." (Ex. C., at 3.) Specifically, the violation report noted that the defendant failed a polygraph exam and, when confronted, finally admitted to drinking alcohol and then going to a massage parlor and paying for sex. The violation report also noted Mr. Schaefer's continued non-compliance and resistance to sex offender treatment. The report states: "Mr. Schaefer also has a history of lack of cooperation with supervision resulting in multiple failed polygraphs and being in possession of unauthorized internet capable devices. Mr. Schaefer also appeared in court in December 2018; however, since that time, his behavior has not improved resulting in inappropriate texts to female employees and the primary therapist. Mr. Schaefer was also deceptive regarding the incident disclosure to the therapist." (Ex. C, at 5.)

Mr. Schaefer subsequently admitted to committing an additional sex crime while on supervised release—paying for sex at a massage parlor. On or about January 7, 2020, Judge Batts sentenced Mr. Schaefer principally to six months' incarceration. At sentencing, Mr. Schaefer's probation officer described the history of his non-compliance leading up to his sentencing:

> Mr. Schaefer's behavior has been, throughout not only this time of supervision, but the past several years has been a major concern for the department, not only when I have been supervising Mr. Schaefer, but also every other officer before me where Mr. Schaefer had done things to try to go undetected by the department, to do things that clearly were premeditated in action. . . . We have tried every single option other than initiating violation proceedings, and it basically -- we had to initiate violation proceedings to get to this point to try to address the situation. But unfortunately, your Honor, I believe the last time I was before the court and when we were all before here, I also made -- advised the court that Mr. Schaefer had also mentioned in between court dates that he was considering reoffending to going back to this massage parlor while in violation proceedings.

(1/7/20 Tr. at 7:3-20.) Judge Batts then sentenced Schaefer to a Guidelines sentence of six months because, among other reasons, "The defendant has been on supervised release for almost five years and his compliance, attitude, and lack of progress during that period has been at best troubling and at worse defiant. Despite the efforts of the Department of Probation and his therapist, the defendant has lied and ignored his obligations, limitations, and responsibilities on supervised release." (1/7/20 Tr. at 9:9-15.)

### B. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" that: [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id.* § 1B1.13 Application Note 1. Application Note 1 provides in relevant part:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

 (I) suffering from a serious physical or medical condition,

 (II) suffering from a serious functional or cognitive impairment, or

 (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *Id.* § 1B1.13 Application Note 1. A catchall provision also allows the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Application Note 1(D). But the Director of the BOP has not made such a determination in this case. Regardless of the theory of "extraordinary and compelling reasons," the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted. See 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the

circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### C. Discussion

Defendant has failed to exhaust his administrative remedies and the Court should deny his motion (without prejudice) for that reason alone. Nonetheless, even on the merits, Defendant has not met his burden to show "extraordinary and compelling" reasons for release.

#### 1. Defendant Has Not Exhausted his Administrative Remedies

In his submission, the defendant concedes that he has failed to exhaust his administrative remedies. Because such exhaustion is mandatory, the Court lacks the authority to grant compassionate release at this time. The Government recognizes that this Court recently decided in *United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, *7 (S.D.N.Y. Apr. 14, 2020), that Section 3582(c)'s exhaustion requirement may be excused for equitable reasons. *Id.* at *5-6. The Government respectfully disagrees with the Court's decision. As this Court is aware, the only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2. The majority of district courts in this District have also required exhaustion despite COVID-19 claims.[1] These decisions are consistent with the plain

---

[1] *See United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3-*5 (S.D.N.Y. Apr. 14, 2020); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2020 WL 1862638, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13 Cr. 353 (KMK), 2020 WL 1862640, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 1847552, at *2 (S.D.N.Y. Apr. 13, 2020); *United States v. Engleson*, 13 Cr. 340 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Fana*, 19 Cr. 11 (GHW), 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020); *United States v. Canale*, 17 Cr. 287 (JPO), 2020 WL 1809287, at *2 (S.D.N.Y. Apr. 9, 2020); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Crosby*, No. 09 Cr. 1056 (WHP) (S.D.N.Y. Apr. 7, 2020) (Tr. of 4/7 conference, at 13); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Arena*, No. 18 Cr. 14 (VM) (S.D.N.Y. Apr. 6, 2020) (Dkt. 354 at 2-3); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020). *But see United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, at *7 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 18211988, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

4

language of Section 3582(c). Accordingly, the Government respectfully opposes the Motion because the defendant has not exhausted his remedies.

### 2. Extraordinary and Compelling Reasons for Release Do Not Exist in this Case

Defendant seeks his release because he is 58, suffers from hypertension, and has an allegedly "irregular heartbeat." (Motion at 6.) The Government does not dispute that the defendant has hypertension, which the Government assumes resulted in his being placed on the MCC's high-risk list. (See Ex. D., Medical Records.)[2] However, the Government is unable to corroborate through medical records the defendant's claim that he has an irregular heartbeat. Instead, the medical records show that Mr. Schaefer denied having any cardiovascular issues as recently as February 6, 2020. (*Id.* at 3.) And, although Mr. Schaefer apparently reported having hernia surgery before surrendering in February 2020, he did not report being hospitalized for an irregular heartbeat. (*Id.* at 5.)

On the facts of this case, Mr. Schaefer's hypertension does not rise to the high level of an extraordinary and compelling reason warranting a reduced sentence resulting in his release. As the Court is likely aware from bail-related litigation in other cases, since at least October 2012, the BOP has had a Pandemic Influenza Plan in place. The BOP has implemented various measures designed to "ensure the continued effective operations of the federal prison system and to ensure that staff remain healthy and available for duty." *Id.* For example, the BOP (a) suspended social visits for 30 days (but increased inmates' access to telephone calls); (b) suspended legal visits for 30 days (with case-by-case accommodations); (c) suspended inmates' movement for 30 days (with case-by-case exceptions, including for medical treatment); (d) suspended official staff travel for 30 days; (e) suspended staff training for 30 days; (f) restricted contractor access to BOP facilities to only those performing essential services, such as medical treatment; (g) suspended volunteer visits for 30 days; (h) suspended tours for 30 days; and (i) generally "implement[ed] nationwide modified operations to maximize social distancing and limit group gatherings in [its] facilities." *Id.*

In January 2020, the BOP began to plan specifically for COVID-19 to ensure the health and safety of inmates and BOP personnel. As part of its Phase One response to COVID-19, the BOP began to study "where the infection was occurring and best practices to mitigate transmission." *Id.* In addition, the BOP assembled "an agency task force" to study and coordinate its response to COVID-19, including using "subject-matter experts both internal and external to the agency including guidance and directives from the WHO, the CDC, the Office of Personnel Management (OPM), the Department of Justice (DOJ) and the Office of the Vice President." *Id.* On March 13, 2020, the BOP implemented its Phase Two response "in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff." *Id.*

As outlined in an April 21, 2020 letter from the Wardens of the MDC and MCC, the MCC has taken a number of additional steps to address COVID-19, including (1) screening each staff member who walks into the facility; screening new inmate arrivals; placing individuals with temperatures in quarantine; placing new arrivals in quarantine; and assessing any inmate with COVID-19 symptoms and placing them in isolation. On April 1, 2020, the BOP enacted a national

---

[2] Given the confidential nature of the defendant's medical records, the Government respectfully requests to file Exhibit D under seal.

14-day action plan, which was recently extended through May 18, 2020. As of April 21, 2020, 7 inmates have been tested at the MCC, 5 have tested positive, and 29 staff members have tested positive.

To this end, the BOP declined to grant Mr. Schaefer's requests to serve his sentence on home confinement or grant him a furlough. Specifically, on April 7, 2020, the warden of the MCC stated that, "[a] review of [Schaefer's] medical records does not identify any significant changes to his medical conditions to warrant greater consideration for home confinement." The BOP is best situated to assess which inmates are most at-risk to the COVID-19 pandemic and to take individualized measures (and release) accordingly. Under the present circumstances, and with respect to this individual defendant, the extraordinary remedy of compassionate release is not warranted. *See Raia*, 2020 WL 1647922, at *2 ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

### 3. The Section 3553 Factors Also Counsel Against Release

The § 3553(a) factors remain relevant for this Court in determining whether to grant a defendant's motion for compassionate release. Those factors also weigh against defendant's Motion. *See* 18 U.S.C. § 3582(c)(1)(A) (directing the court to only consider a motion for compassionate release "after considering the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

As Judge Batts stated at sentencing, Mr. Schaefer's sentence is the culmination of years of noncompliance resulting in the commission of an additional sex offense. Although paying for prostitution from an adult prostitute is less serious than Mr. Schaefer's underlying crime of attempted enticement of a minor, it is nonetheless a demonstration of the defendant's continued disregard for the law and disrespect for the requirements of supervision and the authority of the Court. As Mr. Schaefer's record of supervision demonstrates, Mr. Schafer does not respond to warnings or second chances. Instead, Mr. Schaefer repeatedly lied to probation and engaged in troubling sexual conduct which, unchecked, led to the commission of this violation. The § 3553 factors therefore do not favor the defendant's motion.

Alternatively, if this Court were to grant release, the Government submits that any conditions of release should be tailored to protect the defendant and the safety of the public.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: __/s/_____
Peter J. Davis
Assistant United States Attorney
Southern District of New York
(212) 637-2468

cc: Mark Gombiner, Esq. (by ECF)